PIERCE H. DEAMER, SAMUEL P. BARTOLETTA, PLAIN-TIFFS-APPELLANTS, v. WALTER H. JONES, AS CHAIR-MAN, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued June 1, 1964—Decided June 23, 1964.

517

*Mr. Milton T. Lasher* argued the cause for plaintiffs-appellants.

*Mr. Nelson G. Gross* argued the cause for defendants-respondents.

The opinion of the court was delivered by
PROCTOR, J. *N. J. S. A.* 19:5–4 provides:

"* * * A vacancy in the office of a member of the State Committee of any political party * * * shall be filled for the unexpired term by the members of the county committee of such political party in the county in which the vacancy occurs."

On September 18, 1963 Walter H. Jones, a member of the Republican State Committee from Bergen County, resigned that post. On September 25 Jones in his capacity as Chairman of the Bergen County Republican Committee sent a letter to the members of the county committee reminding them of the meeting scheduled for October 1, 1963, and informing them that the county committee would elect his successor to the State Committee at that time. This meeting had been listed as one of the regular meetings of the committee on the reverse side of the membership cards which had been issued to each committee member. The letter contained two recommendations of the committee's Executive Committee: (1) that Sidney S. Coggan be elected to fill the vacancy; and (2) that a convention-type procedure be inaugurated for the election.

Coggan's candidacy for the post was opposed by certain members of the committee. Pierce H. Deamer and Samuel P. Bartoletta, members of the committee, and John K. Pollitt, whom they were supporting to fill the vacancy, filed a complaint against Jones, the County Committee, its Execu-

tive Committee, three other officers of the County Committee, and Coggan. The plaintiffs sought relief in lieu of prerogative writs and a declaratory judgment that the election had been illegally called. On September 30, 1963 the defendants were ordered to show cause on October 1 why the election should not be restrained. At the hearing on the order in the Superior Court, Law Division, Judge Leyden denied the relief requested but retained jurisdiction so that the plaintiffs could pursue the matter in the event they were disappointed in the election.

At the meeting of the committee that evening a motion was made from the floor and unanimously passed that the committee hold the election for the position of State Committeeman. A nominating speech and two seconding speeches were made on behalf of each of the two candidates. In accordance with a motion from the floor, duly seconded and passed, the vote was taken by a modified convention system, *i. e.*, each municipal chairman announced the results of the voting in his unit, and then the individual members of the unit were polled and each announced his own vote. There were 571 members present and voting out of a total membership of 836; 500 voted for Coggan and 71 for Pollitt.

At the time of the election, the County Committee, which is elected annually in the spring primary election, had not yet adopted bylaws as it is empowered to do by statute (*N. J. S. A.* 19:5-3). Bylaws for previous years had provided that seven days' notice be given members of elections to fill vacancies occurring in committee offices but were silent with respect to the election of State Committee members.

On November 8, 1963 Deamer and Bartoletta amended their complaint (Pollitt withdrew from the action), seeking to have the election set aside and a new election held with the method of voting to be as directed by the court. Defendants moved for summary judgment, which was granted by Judge Leyden on November 15, 1963. Plaintiffs appealed, and while the matter was pending in the Appellate Division, we certified it on our own motion.

Plaintiffs contend that the statute (*N. J. S. A.* 19:5–3) requires each county committee to adopt bylaws for its proper government. And they further contend that in the absence of bylaws neither the County Chairman nor the Executive Committee has any power not specifically conferred by statute. Thus, they conclude that the election was invalidly called. They also contend that secret ballots should have been used in taking the votes as a matter of public policy.

The only mandatory provision in the statute relating to bylaws is that "[t]he county committee shall determine by its bylaws the units into which the county shall be divided for purpose of representation in the county committee." *N. J. S. A.* 19:5–3. The statute further provides that the committee "shall have power to adopt a constitution and by-laws for its proper government." The office of chairman of the county committee is established by the statute which provides that he shall be elected by the members at their first meeting, that he shall preside at all meetings, and that he shall perform all duties required of him by law and the constitution and bylaws of the committee.

■■ Historically, courts have been most reluctant to interfere in intraparty controversies in the absence of the violation of a controlling statute or the infringement of a clear legal right. See cases collected in 169 *A. L. R.* 1281 (1947). Political parties function through their county committees, and the members and chairmen of these committees are in a sense trustees of the party interests for the registered voters of the party in the county. See *Application of Roosevelt,* 9 *Misc. 2d* 205, 160 *N. Y. S. 2d* 747, 749–750 (*Sup. Ct.* 1957), aff'd 163 *N. Y. S. 2d* 403 (*App. Div.* 1957). Prior to 1903 the county committees operated privately and were unregulated by statute. In that year the Legislature provided that a county committee could adopt a resolution declaring that its members would be elected at annual primary elections. *L.* 1903, *c.* 248, *p.* 608. In 1909 the statute was amended to make election of the county committee at primaries mandatory. *L.* 1909, *c.* 106, *p.* 159. See the discussion in *Bon-*

*tempo v. Carey,* 64 *N. J. Super.* 51, 56 (*Law Div.* 1960). The present provisions relating to party organizations, *N. J. S. A.* 19:5–1 to –6, reflect a legislative intent to provide but the rudimentary framework by which county committees should operate. We see no intention to create a pervasive regulation of intraparty operations and procedures as plaintiffs contend.

The statute does not require, but merely permits, the adoption of bylaws for the government of the county committee. We cannot infer from the mandatory direction that units of county representation be established by bylaws that the Legislature intended that the committee must adopt bylaws governing every matter which might come before it. Nor can we agree that the chairman's authority is restricted to specific statutory powers in the absence of bylaws granting him additional duties and powers. Election statutes should be construed liberally to effectuate their purpose. *Kilmurray v. Gilfert,* 10 *N. J.* 435, 440 (1952). We should not read into the statute restrictions on party organization and procedures not specifically imposed by the Legislature. To do so would plunge the courts deep into the business of resolving intraparty controversies and factional strife, contrary to the established principle of judicial restraint in this area.

Neither the Chairman nor the committee violated any statutory provision in calling the election or in conducting it. Nor is there any indication that the plaintiffs were treated unfairly or deprived of their legal rights in any way. The members of the county committee were adequately informed of the need to fill the vacancy, and they were given full opportunity to express their wishes as to which candidate should be the new State Committeeman. We see nothing unfair in the voice-vote procedure followed by the committee. Certainly it is not improper for elected representatives to adopt an open form of voting, rather than a secret ballot, so that their constituents will know how they voted.

Plaintiffs contend that summary judgment was an improper disposition of the present case, but they point to no

material facts as to which they and the defendants disagree. There being no genuine issue of disputed fact, the trial court properly granted summary judgment for the defendants, and its judgment is accordingly affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.