117 N.J. Super. 244 (1971)
284 A.2d 368
IN THE MATTER OF THE ORGANIZATION OF THE ATLANTIC COUNTY BOARD OF ELECTIONS.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1971.
Decided December 2, 1971.
*245 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Morgan E. Thomas argued the cause for appellant Dolores I. Mooney.
Mr. John F. Callinan argued the cause for respondent William T. Dunbar (Messrs. Perskie & Perskie, attorneys).
Mr. Alfred L. Nardelli, Deputy Attorney General, argued the cause for respondent William T. Cahill, Governor of New Jersey (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Nardelli, on the brief).
*246 The opinion of the court was delivered by LABRECQUE, J.A.D.
By the present appeal the parties seek a determination as to who is entitled to the position of Democratic member of the Atlantic County Board of Elections (the Board) for the two-year term beginning March 1, 1971.
The present action was originally instituted by John L. Toy, Jr. (Toy), the remaining Democratic member of the Board, against the two Republican members of the Board, William M. Snyder and Ryerson Mausert. Later, the complaint was amended to add Dolores I. Mooney (Mrs. Mooney), as a party plaintiff, and Governor Cahill as a party defendant. The amended complaint in lieu of prerogative writs charged that Mrs. Mooney was the lawfully nominated Democratic member of the Board; that she should have been so commissioned by the Governor, and that the organizational meeting of the Board held on March 9, 1971 without her participation was improper and illegal. Subsequently William T. Dunbar (Dunbar), the other claimant to the position, was permitted to intervene.
Thereafter there was a motion by plaintiffs and a cross-motion by Dunbar for summary judgment, based upon affidavits by the parties. Later, in response to the court's direction that oral testimony be produced, both plaintiffs testified. Dunbar did not testify but elected to rely on his prior affidavits. In its amended final judgment the court held that Dunbar was the valid nominee and that the Board's organizational meeting of March 9, 1971 was valid and proper. Mooney thereupon filed the present appeal.
Each county election board consists of four persons. N.J.S.A. 19:6-17 provides, in pertinent part:
Two members of such county board shall be members of the political party which at the last preceding general election, held for the election of all of the members of the General Assembly, cast the largest number of votes in this State for members of the General Assembly, and the remaining 2 members of such board shall be members of the political party which at such election cast the next *247 largest number of votes in the State for members of the General Assembly.
The method of nomination and appointment of members of a county board is set out in N.J.S.A. 19:6-18 as follows:
During the 30 day period immediately preceding February 15 in each year, the chairman and vice-chairlady of each county committee, and the State committeeman and State committeewomen [sic] of each of such 2 political parties, respectively shall meet and jointly, in writing, nominate one person residing in the county of such county committee chairman, duly qualified, for member of the county board in and for such county. If nomination be so made, the said county committee chairman shall certify the nomination so made to the State chairman and to the Governor, and the Governor shall commission such appointees, who shall be members of opposite parties, on or before March 1. If nomination be not so made on account of a tie vote in the said meeting of the county committee chairman, county committee vice-chairlady, State committeeman and State committee-woman, in respect to such nomination, the said county committee chairman shall certify the fact of such a tie vote to the State chairman, who shall have the deciding vote and who shall certify, in writing, to the Governor, the nomination made by his deciding vote. Appointees to county boards of election pursuant to this section shall continue in office for 2 years from March 1 next after their appointment.
Members of the state committee are elected at the primary for the general election of the year in which a Governor is elected. N.J.S.A. 19:5-4. On January 1, 1971 the duly elected members of the Democratic State Committee for Atlantic County were David Dichter (Dichter) and Mary E. Haynie (Mrs. Haynie). The chairman and vice-chairlady of the Atlantic County Democratic Committee are elected annually at the organization meeting of the committee following the primary election. In January 1971 Dunbar was the Democratic county chairman and the vice-chairlady was Bertha Brown (Mrs. Brown).
The facts in the context of which the present controversy must be resolved are brief. On January 27, 1971 Dunbar addressed a letter to Mrs. Haynie advising her of a meeting to be held on Tuesday evening at 8 P.M. (without specifying *248 the date) "to nominate a person for the County Election Board." Upon receipt of the notice on the following day, Mrs. Haynie phoned Dunbar and, after ascertaining that the Tuesday referred to in the notice was February 2, 1971, protested that the notice was too short to permit the attendance of Dichter, the state committeeman, who was then out of the country working on an International Aid project. Dunbar allegedly refused to change the meeting date.
A similar notice of the meeting had been mailed to Dichter at his usual residence in Atlantic City, although there is evidence that Dunbar knew at the time that he was out of the country. No contention is made that the notice could have been received by Dichter in time to attend the called meeting, and Dunbar made use of no other form of notice.
Through the efforts of Mrs. Haynie and other friends, Dichter was finally located in Switzerland and advised, on the night of January 30, of the date and purpose of the meeting. Since it was too late for him to make arrangements to attend, he, on January 31, 1971, forwarded a cablegram addressed to Mrs. Haynie directing her to cast his vote for Mrs. Mooney for appointment to the County Election Board. He confirmed this by a follow-up letter dated February 3 in which he stated, "I would like to take this opportunity to cast a proxy vote in favor of Mrs. Lori Mooney for the Election Board appointment. I regret the delay in getting my proxy vote to you. I was under the impression that this could be done by telegram, which I believe you have already received."
On February 2, 1971 Dunbar, Mrs. Brown and Mrs. Haynie met. Dunbar nominated himself for membership on the County Board of Elections and Mrs. Haynie nominated Mrs. Mooney. Thereupon Dunbar voted for himself as did Mrs. Brown. Mrs. Haynie voted for Mrs. Mooney and also offered the cablegram vote of Dichter for her. Dunbar rejected Dichter's vote and prepared a certificate reciting that he, Mrs. Brown and Mrs. Haynie had attended the meeting, and that "all of said persons present jointly, in writing" had *249 nominated him for the office. However, the certificate carried a notation that Mrs. Haynie "did not vote" and that Dichter, the Democratic state committeeman, was "living in Switzerland."
In actuality, Dichter, whose permanent and voting address was in Atlantic City, was employed by the International Secretariat for Volunteer Services (U.N.) and was temporarily residing in Switzerland. According to his affidavit filed in the cause, had he received timely notice of the February 2 meeting, he would have made arrangements to return to Atlantic City.
On February 16, 1971 Salvatore A. Bontempo, chairman of the Democratic State Committee, certified by letter to Governor Cahill that he had concluded that Mrs. Haynie and Dichter had voted for Mrs. Mooney; that this had resulted in a tie, and that he was exercising his prerogative to break the tie in favor of Mrs. Mooney. Although the last date for certifying nominations to the Governor was February 15, 1971, the fact that February 15, 1971 was a legal holiday (Washington's Birthday) made his letter timely.
Three days thereafter, on February 19, 1971, Dunbar transmitted to the Governor a "duplicate original" of his prior certification that he had been nominated (apparently the original had been sent only to the chairman of the Democratic State Committee). The Governor, after consultation with his counsel, elected not to issue a commission to either contestant.
On March 9, 1971 the two Republican members of the County Board of Elections convened a meeting of the Board to "organize by electing one of their number to be chairman and one to be secretary * * *." N.J.S.A. 19:6-22. Plaintiff Toy, the only commissioned Democratic member, appeared at the meeting and moved for a postponement so that the Board could organize with its full complement of two Republican and two Democratic members, as required by statute. The motion was rejected by the vote of Snyder and Mausert. Toy thereupon left the meeting room and *250 Snyder and Mausert proceeded to organize the Board alone. They elected Toy, in absentia, as chairman and Mausert as secretary. The latter position is generally the preferred one, being higher paid, and involving more concern with the day-to-day activities of the Board. N.J.S.A. 19:45-7.
The trial judge held, and we agree, that Dichter was not casting a proxy vote, but was casting a form of absentee ballot by means of the cablegram addressed to Mrs. Haynie. However, he held that the statute required all of the parties to "meet" and make the nomination, and that this precluded acceptance of Dichter's vote. He noted that had the requirement that the four named persons meet been directory rather than mandatory "the essence would be the vote rather than the means by which the vote arrived." He concluded that the nominating meeting was valid notwithstanding the absence of Dichter; that Dunbar had received the nomination by a majority of those present and, without regard to certain inaccuracies in the certificate, was entitled to the position.
Mrs. Mooney challenges the judgment upholding the designation of Dunbar on the following grounds:
1. The Dichter cablegram vote is valid and resulted in a tie vote for the nomination.
2. Dunbar is barred, on principles of equity, and by lack of qualification, from taking the position of Election Board member.
3. The Governor must honor the certification from the chairman of the Democratic State Committee.
The rule is well settled that the election laws are to be liberally construed to effectuate their purpose. Deamer v. Jones, 42 N.J. 516, 521 (1964); Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952); Carson v. Kalisch, 89 N.J.L. 458, 465 (Sup. Ctn 1916), aff'd Carson v. Scully, 90 N.J.L. 295 (E. & A. 1917). They should not be so construed as to deprive voters of their franchise or render an election void for technical reasons. Kilmurray v. Gilfert, supra, 10 N.J. at 440; Sharrock v. Keansburg, 15 N.J. Super. 11, *251 19-20 (App. Div. 1951). To accomplish this result our courts have not hesitated to remove formal roadblocks to free and untrammeled participation in the electoral process.
In Wene v. Meyner, 13 N.J. 185, 191 (1953), which involved the 1953 Democratic gubernatorial primary, several thousand voters had been permitted to vote without having filed a formal written declaration of their desire to take part in the Democratic primary. The statute, R.S. 19:23-45, as then amended, provided, in pertinent part, that a voter "who [had] not voted in a primary election of a political party for two subsequent annual primary elections" should not be permitted to vote in any primary election of a political party until he had "first signed and filed with the district board a declaration designating the political party in whose primary election he [desired] to vote." In disposing of this formal challenge to the election Justice Heher held:
It would be a forced interpretation, at variance with the essential quality and meaning of the provision, to hold that even though the individual voter had, by the unimpeachable record, the undoubted right to take part in the primary of the particular party, the vote cast becomes void for failure of the election board to demand a formal written declaration of the voter's "desire" to take part in the primary of that party, and is to be charged against the successful candidate in the final count, even though the candidate for whom it was cast be unknown. A primary, after all, is a medium for expressing the preferences of those united under the party standard; and, while protective legislative measures are to be enforced according to their spirit, a construction that would nullify votes cast by qualified primary electors is to be avoided unless that purpose be expressed in clear and unambiguous terms. It would be a harsh and oppressive construction that would reject the votes cast here by electors of undoubted qualifications for want of a formal written declaration by the voter of his "desire" to participate in the Democratic primary, even though that desire was unequivocally expressed by the action of voting itself. [Wene v. Meyner, supra, at 193-94]
More recently, in In re Smith, 59 N.J. 236, 237 (1971), the Supreme Court, contrary to the requirements of N.J.S.A. 19:13-7 that the signatures on nominating petitions be supported by affidavits of "five" of the signers that they *252 "saw all the signatures made thereto," held that such requirement served no public purpose and that the legitimate statutory objective could be met by a single verification. See also Filippone v. O'Connor, 116 N.J. Super. 399 (Law Div. 1971); In re Smock, 5 N.J. Super. 495, 501 (Law Div. 1949).
We are here concerned with a direct confrontation between form and substance. Posed in the words of the court below the issue is whether the "essence" of the legislative intent is the "vote" of the man designated by law to cast it or the "means by which the vote arrived." We are convinced that the provision for a meeting was directory rather than mandatory and that the legislative intention was primarily directed to securing the nomination of members of county election boards by the votes of the persons on whom that duty was cast by law. The means of arriving at that vote were secondary to this primary legislative objective.
By virtue of N.J.S.A. 19:6-18 the state committeeman, the state committeewoman, the county chairman and the county vice-chairlady of the two principal political parties are designated as an ad hoc committee for the single purpose of nominating a member of the county election board representing their party. The committee has no formal or organizational structure. There is no provision in the statute for any specific date or place of meeting, and no provision for written notice thereof. The committee is not a deliberative assembly in its true sense, but partakes more of the characteristics of an election board, sitting for the purpose of receiving the votes of its members on a single issue. It differs in many respects from the county committee, which is composed of duly elected members from each election district in the county and meets for the purpose of organizing, and, thereafter, determining party policy and directing party activity.
N.J.S.A. 19:6-18 does not prescribe who shall call or serve the notice of the meeting, but since the county chairman *253 did so here, and his right to do so is not challenged, we need not pass upon the point. Quaere as to what would be the result if the county chairman had called for a meeting at a certain time and place and the remaining three members of a nominating group, electing to meet at another time and place, had there determined upon a nominee without the assent of the county chairman.
It was clearly the essence of the legislative scheme that each political party, through the holders of the four offices mentioned, should submit to the Governor the party's nomination for membership on the county board of elections, and that the Governor should commission whomever the party should thus select. Should they be unable to agree upon a nominee by a majority vote, the Governor could not appoint his own candidate but the chairman of the State Committee (who under the prior law had also been a member of the nominating committee) was to break the tie and certify to the Governor the winning nominee. Only in the event no action was taken within the statutory time could the Governor commission his own choice. N.J.S.A. 19:6-20.
Here Dichter was not acting from personal motives but was fulfilling a duty laid upon him by the law which provided for his election and prescribed his duties. The essence of his duty here was the casting of his vote for his nominee to the County Election Board. Ordinarily, the vote called for would be taken at a meeting of the four persons named. The validity of the result arrived at a meeting called for that purpose was dependent upon each of the nominators being afforded the opportunity of performing his or her statutory duty. Since the meeting here was called for a time when Dichter could not have reasonably been expected to attend, either his cablegram vote should have been counted or he should have been notified that it was rejected and afforded an opportunity to cast his vote at an adjourned meeting of the committee. Since the latter course was not followed, his cablegram vote for Mrs. Mooney should have been counted.
*254 Since Dunbar claims receipt of but two votes at the meeting and it is conceded that Mrs. Haynie voted for Mrs. Mooney, the addition of Dichter's vote created a tie which was properly resolved in favor of Mrs. Mooney by State Democratic Chairman Bontempo's certification of February 16, 1971 to Governor Cahill. It follows that Mrs. Mooney was and is the duly nominated candidate for Democratic member of the Atlantic County Board of Elections, and as such is entitled to be commissioned as a member of that Board for the term fixed by law.
N.J.S.A. 19:6-19, which provides for the filling of vacancies on a county board of elections for any cause other than expiration of term, omits the provision that the nominators "meet" and requires only that they "shall jointly nominate a successor * * *," is consistent with the result reached by us.
By reason of the foregoing we find it unnecessary to consider the remaining points advanced by appellant referable to the February 2, 1971 meeting.
We have considered plaintiffs' challenge to the validity of the March 9, 1971 organization meeting of the County Board of Elections and cannot say that the refusal to adjourn the meeting until the open Democratic position had been filled was arbitrary or unreasonable. The statute, N.J.S.A. 19:6-22, required that the Board organize annually on the second Tuesday in March unless the Board agreed otherwise. The position of secretary was one which could not long be left unfilled. There was no reasonable prospect of the impasse being quickly resolved  as was confirmed by subsequent events. The Board was not precluded from functioning by the failure to appoint a fourth member.
The Board met with a quorum consisting of Toy and the two Republican members. Toy was a member of a public body charged with the performance of statutory duties, and could not, by walking out of the duly convened meeting of the Board, prevent it from thereafter functioning.
*255 By reason of the foregoing the judgment of the Law Division is reversed and the matter remanded for further proceedings in accordance with this opinion.