—— A.2d ——

FRANK CATANIA, A CANDIDATE FOR MEMBERSHIP IN THE NEW JERSEY STATE ASSEMBLY REPRESENTING THE THIRTY-FIFTH LEGISLATIVE DISTRICT, PASSAIC COUNTY REPUBLICAN COUNTY COMMITTEE, A STATUTORILY RECOGNIZED COUNTY ORGANIZATION FOR THE REPUBLICAN PARTY, THE BERGEN COUNTY REPUBLICAN COUNTY COMMITTEE, A STATUTORILY RECOGNIZED COUNTY ORGANIZATION FOR THE REPUBLICAN PARTY, PLAINTIFFS-APPELLANTS, AND NEW JERSEY REPUBLICAN STATE COMMITTEE, PLAINTIFF-INTERVENOR-APPELLANT, v. JOAN HABERLE, SECRETARY OF STATE OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued October 2, 1990—Decided October 2, 1990.
Opinion filed April 10, 1991.

*Jerome M. Vogel* argued the cause for appellants (*Jeffer, Hopkinson, Vogel, Coomber & Peiffer,* attorneys; and *Jose R. Santiago,* on the letter brief). *Edward Gross* argued the cause for intervenor-appellant.

*David Dembe,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

WILENTZ, C.J.

The Passaic County Republican Committee and the Bergen County Republican Committee selected plaintiff Frank Catania as their party's candidate to run in a special election for the New Jersey Assembly. As explained below, the primary that preceded the special election failed to produce a Republican candidate. The Republican County Committees took the position that such failure resulted in a vacancy that they were

empowered to fill. Therefore, after the primary they filled the vacancy by selecting plaintiff Catania as the Republican candidate for the Assembly in that special election.

The Secretary of State concluded that either a vacancy had not been created or, if one had been, it had not been filled in accordance with relevant statutes. If her position had been upheld, the special election for Assembly for that district would have presented the voters with no choice: the Democratic candidate's name would have been the only name on the ballot. We conclude that because providing the public with a choice between candidates is one of the most important objectives of our election laws, the Legislature could not have intended such a result.

In view of the then-impending special election, we announced our decision shortly after oral argument. This opinion explains that decision. In accordance with our decision, Mr. Catania's name appeared on the ballot as the Republican candidate. He won the election.

I.

The vacancy that Mr. Catania filled came about in the following way. Senator Frank Graves, Jr. died during his term. Because Senator Graves was a Democrat, the Democratic County Committees were empowered to fill the vacancy. *N.J.S.A.* 19:27–11.2. Senator Graves' seat was filled by then-Assemblyman John Girgenti, and Girgenti's Assembly seat was filled by Cyril Yannarelli, pending a special election to produce a duly-elected Assemblyman. *N.J.S.A.* 19:27–11.1.

The primary for the special election for that Assembly seat was scheduled for June 5, 1990, the date of the regular primary for other offices throughout the state. The Democratic party had two names on the primary ballot, appearing there by virtue of petitions previously filed pursuant to *N.J.S.A.* 19:23–14. The Republican primary ballot, however, had no names because no petitions had been filed. Pursuant to *N.J.S.A.* 19:23–47, pri-

mary voters can write in the name of a qualified person on a space provided on the ballot sheet, and their votes will be counted. If a write-in candidate gets more votes under those circumstances than any other write-in candidate for the nomination, that person becomes the party's Assembly nominee, unless he or she receives fewer than "the number of signatures required on a petition to place upon the primary election ballot the name of a candidate for that office, pursuant to [*N.J.S.A.*] 19:23–8." *N.J.S.A.* 19:14–2.1. And that is what happened here. There were two Republican write-in candidates, one of whom received seventy-five votes and the other a single vote. Neither candidate received enough write-in votes, since 100 signatures would have been needed for a primary petition pursuant to *N.J.S.A.* 19:23–8. Thus, no one was selected in the Republican primary as that party's candidate for the Assembly.

We had previously held in *Fields v. Hoffman,* 105 *N.J.* 262, 520 *A.*2d 751 (1987), that under those circumstances a vacancy existed as defined in *N.J.S.A.* 19:13–18, to be filled pursuant to *N.J.S.A.* 19:13–20, providing, generally, that the party's county committee shall select the candidate. After the primary, but before any steps had been taken by anyone to fill that vacancy, the Legislature passed *L.* 1990, *c.* 56, amending *N.J.S.A.* 19:27–11.1 and effectively overruling our holding in *Fields.* Under circumstances in which a write-in effort is attempted in the primary but the number of votes is not sufficient to elect any candidate, the amendment forecloses the party from thereafter selecting a candidate. It has the effect, in other words, of allowing the election to go forward without any candidate for that position from that party.

The applicability of the foregoing amendment is one of the issues before us, the Secretary of State taking the position that it applies to this case and that there is therefore no vacancy to be filled, plaintiff Catania taking the position that it was not intended to be retroactive. If there was a vacancy to be filled, *N.J.S.A.* 19:13–20(b)(1) provides that within seven days of its occurrence, the chairpersons of the Republican County Commit-

tees were to give notice of a meeting of the County Committees to be held for the purpose of filling the vacancy. Although notice was given, not only was it not within the seven days after June 5, the primary date, but it was apparently given either late in August or early in September, after the amendatory act had taken effect. Pursuant to that notice, the County Committees met on September 6, 1990, and selected Catania as the Republican party's candidate for Assembly from the district. The Secretary of State, however, refused to accept the certifications of Catania as the Republican candidate. As a result, the county clerks would not place Catania's name on the ballot.

Shortly thereafter, Catania brought this action to compel the Secretary of State, the county boards of election, and the county clerks of Passaic and Bergen counties (the district covers municipalities in both counties) to place Catania's name on the ballot. The Secretary of State contended that the amendatory law applied and that there was therefore no vacancy to be filled. The trial court ruled that the amendment did not apply but ruled that the County Committee Chairpersons' failure to give notice within the seven-day statutory period invalidated Catania's selection at that subsequent meeting. On September 25, 1990, the Appellate Division summarily affirmed, explicitly withholding judgment on the retroactivity issue because it believed the issue had not been pressed before it. Catania attempted to appeal to us on constitutional grounds. Treating his notice of appeal as a notice of petition for certification, we granted certification on all issues, requested briefs, and held oral argument on October 2, 1990. Later that day, we announced our decision reversing the Appellate Division's judgment and ordering that Mr. Catania's name appear on the ballot.

## II.

The general rule applied to the interpretation of our election laws is that absent some public interest sufficiently

strong to permit the conclusion that the Legislature intended strict enforcement, statutes providing requirements for a candidate's name to appear on the ballot will not be construed so as to deprive the voters of the opportunity to make a choice. See *Kilmurray v. Gilfert*, 10 *N.J.* 435, 440–41, 91 *A.*2d 865 (1952). Although the Legislature has, through *L.* 1990, *c.* 56, identified a situation in which it will bar candidates from the ballot, we are convinced that that situation represents the extraordinary exception.

In passing the amendatory act overruling *Fields*, quite clearly the Legislature concluded that when a party is somehow unable to garner even a minimal number of votes for a write-in candidate at the primary, society and its political processes are better served by keeping that position blank on the general-election ticket. The Legislature may have intended to prod parties into greater action by the amendment, or other considerations may have been in mind. Whatever the Legislature's goal, the explicit unambiguous effect was to end the electoral process within the party for that position at that point. No "vacancy" was to be deemed to exist, and the party was simply powerless at that point to use any other procedure to put the name of a candidate on the ticket for the general election.

What is not at all clear, however, is whether that amendatory statute, passed after the vacancy in this case had occurred (and there is no question but that based on the results of the primary, a vacancy *had* occurred under *Fields* ), was intended to apply retroactively so as to deprive the Republican party, or any party, of a right to fill such a vacancy, which the law had previously given it. Although the amendatory act contains the usual language that it "shall take effect immediately," that does not begin to answer the question, because the obvious issue is not when it became effective, but rather to what state of facts it was intended to apply.

Both the language of the statute and its legislative history are of no help on this problem. We think it would be most

unusual for the Legislature to want to change the rules in the middle of the game. Other than that generalized conception of legislative intent—reflecting very strong traditions of fairness in connection with the electoral process—there are other specific reasons for that conclusion. The Republican party was not on notice before the primary that lack of party effort in the write-in campaign might result in that party's having no name on the general-election ticket—it had every reason to believe that *Fields* would allow it to pick a candidate if no write-in candidate had received sufficient votes. Furthermore, any other construction suggests that the Legislature took away from one party, to the advantage of another (for this case is the only instance we know of in which the amendatory statute could be so applied retroactively), the ability under the election statute to put that party's candidate's name on the ticket, an action that we do not believe the Legislature could have intended. We therefore hold that Chapter 56 was not intended to apply retroactively.

█ Thus, under the law a vacancy existed in the Republican party's candidacy for Assembly, and pursuant to our construction of Chapter 56, it was not affected by that amendatory statute. It was to be filled in accordance with *N.J.S.A.* 19:13–20.

The Secretary of State asserts that the statutory provision that the chairperson give notice of the meeting to fill the vacancy within seven days after its occurrence is "mandatory," or put differently, that failure to give the notice within the allotted time is fatal and the vacancy simply cannot be filled. She argues that the reason for such construction is that the Legislature sought to achieve important goals through requiring relatively early notice. One of the goals was to assure a quick selection of someone to fill the vacancy so that the public would have as much time as possible to evaluate that candidate between the time of selection and the date of the general election. The other reason, suggested at oral argument, was to

let the party members know whether the party intended to fill the vacancy at all. We find neither reason sufficiently persuasive to warrant the conclusion that the Legislature intended that failure to comply with that statutory provision would have this drastic result, namely, depriving the party of the ability to put any candidate on the general-election ballot.

Neither of those suggested purposes is sufficiently served by the timing of the notice to persuade us that the Legislature intended that timing to be mandatory. In the case of alerting party members to the fact that the party is going to attempt to fill the vacancy, it would be almost universally assumed that such would be the case. In other words, the need for such notice to bring party members to the alert seems highly theoretical. Furthermore, such notice is presumably intended to enable party members to campaign for nominees for the position or otherwise organize their power, but again the statute does not bear the weight of that reason well because it allows the party-committee meeting to take place two days after the notice has been given—hardly enough time for the "alerting" to have much effect. Under the statute, for instance, if a vacancy occurred, the party chairperson could give the notice on election night and have the meeting two days thereafter, at which time the candidate would be selected. Such a result is consistent with the statute, yet does not serve the purported interest of alerting the party. We do not mean to suggest that informing the party members of the vacancy is not a good reason to have the seven-day requirement, nor do we suggest that it does not represent a state interest sufficient to support disqualification in some other context. All we mean is that under the circumstances of this case, and the structure of this statute, we do not believe the Legislature intended to deprive the party of its ability to fill a vacancy.

Furthermore, we do not agree that the provision should be given this disqualifying effect on the grounds that it sought to advance the important state interest of assuring the selection of a candidate as early as possible so that the public would have a

chance to evaluate his or her merits. The simple fact is that the notice provision does not carry with it any requirement that the meeting be held early; the only timetable in the statute for the *holding* of the party-committee meeting to fill the vacancy is the requirement that the candidate's name be sent to the Secretary of State, forty-eight days before the general election. *N.J.S.A.* 19:13–20(d). If the notice of the vacancy is sent on primary-election night, the statute allows that notice to set the date for a meeting at any time, subject implicitly only to the deadline for submitting the nominee's name to the Secretary of State and the very clear provision—intended to ·prevent the meeting from being held too *early*—prohibiting a meeting sooner than two days after the notice.

Moreover, we do not believe the circumstances make it any more likely that because the notice is required to be given early, the meeting will be held early. The factors that influence a party chairperson in selecting the date of the meeting are numerous and complex. Those factors include, among others, obtaining the strongest candidate, allowing all segments of the party adequate time to rally their forces effectively for the meeting, preventing destructive dissension within party ranks, and strengthening the chairperson's segment of the party. Together those factors can support an argument for either an early or late meeting, depending on the interaction of the goals and the facts as they then exist. And when the party chairperson is in doubt over whether an early or a late meeting will serve those goals, like many in politics, he or she may choose the latest meeting date possible. We do not believe, given those factors, that the Legislature, even assuming it believed the notice provision *tended* to achieve early selection of a candidate (and we do not accept that proposition), would have wanted to deprive the party of the ability to fill the vacancy simply because of a failure to send the notice out within the seven days.

The unimportance of the timing of the notice, relatively speaking, is underscored by the fact that it is not required to be given in writing or to be mailed. *Cf. N.J.S.A.* 19:5–3 and –4 (outgoing chairperson must mail notice of time and place of state and county committee annual meetings to members-elect). We note that there is no timing requirement for the notice in filling other vacancies of much greater importance—United States Senate, Governor, or any statewide position, *N.J.S.A.* 19:13–20b(4). In addition, the Secretary of State keeps no records of the date the notice is given or the date the meeting is held. Those facts further underline the lack of indicia of anything mandatory about this provision.

We emphasize that the issue in this case is not limited to the filling of a vacancy for failure of a write-in candidate at the primary. The seven-day notice provision applies no matter how the vacancy occurs. For instance, if the party has its very strongest candidate on the primary ballot and that candidate wins the primary but thereafter dies or refuses to accept the nomination, then a vacancy occurs. That vacancy, just like the vacancy that occurs on failure of a write-in candidate, is filled at a meeting of the party committee called on notice by the party chairperson. Assuming there is another, almost as strong candidate for that position within the party, the Secretary of State's construction of the statute would deprive the party of the ability to put that candidate on the general election ticket if the party chairperson failed for any reason to get the notice out within the seven days, a notice whose timing under the statute as written is not well designed to advance any state interest whatsoever. And if there were no such clear alternative candidate, it is most probable that the meeting would be called for the *latest* possible date, simply because the chairperson could not, within those seven days, determine a meeting date that best served the party's interests. Thus, it is inconceivable to us that the Legislature would have intended the

provision to be construed as mandatory.[1]

Concerns have been expressed that by giving this deadline provision a directory, rather than mandatory, construction we will create doubts about many other sections of the election law, a law that is driven by deadlines. Our only response is that this Court has traditionally given a liberal interpretation to that law, "liberal" in the sense of construing it to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day. See *Kilmurray, supra,* 10 *N.J.* at 440–41, 91 *A.*2d 865. Obviously, there will be cases in which provisions must be interpreted strictly, mandatorily, for in some cases it will be apparent that that interpretation serves important state interests, including orderly electoral processes. But those cases must be decided on their own facts, under the law involved. This Court has never announced that time limitations in election statutes should be construed to bar candidates from the ballot when that makes no sense and when it is obviously not the Legislature's intent. There are states that have such rules, but New Jersey is not one of them. *See, e.g., Deamer v. Jones,* 42 *N.J.* 516, 201 *A.*2d 712 (1964) (election statutes should be liberally construed to effectuate their purpose); *Sadloch v. Allan,* 25 *N.J.* 118, 135 *A.*2d 173 (1957) (same); *Wene v. Meyner,* 13 *N.J.* 185, 98 *A.*2d 573 (1953) (election laws are liberally construed to protect voters' fran-

---

[1]We note the similar directory construction of a vacancy statute in *Kilmurray, supra,* 10 *N.J.* at 440–41, 91 *A.*2d 865. *See also Campi v. Aikins,* 43 *N.J.* 319, 204 *A.*2d 345 (1964) (vacancy may be filled even though procedure did not conform to court's construction of statute); *In re Atlantic County Bd. of Elections,* 117 *N.J.Super.* 244, 284 *A.*2d 368 (App.Div.1971) (statutory provision for meeting to nominate member of county election board held to be directory); *cf. In re Appointment to Hudson County Bd. of Elections,* 220 *N.J.Super.* 367, 532 *A.*2d 269 (App.Div.1987), *certif. denied,* 110 *N.J.* 187, 540 *A.*2d 182 (1988) (statutory language that selection committee "shall" meet, nominate, and certify in writing to governor the name of county election-board member by a specific date is mandatory).

chise). *But cf. Hutson v. Bass*, 54 *N.Y.*2d 772, 426 *N.E.*2d 749, 443 *N.Y.S.*2d 57 (1981) (although substantial compliance with election law is acceptable concerning details of form, there must be strict compliance with statutory commands on matters of prescribed content).

Our holding has no implication of the validity of the seven-day time limit. It is perfectly valid. All we hold is that it is not mandatory. We therefore need not deal with the constitutional arguments, including the contention that under certain circumstances the seven-day provision, if mandatory, would be unconstitutional.

We note that no one contends the proceedings of the Republican party were anything other than fair. As far as we can tell from the record, the notice was given, it was proper (except for its lateness), the party committees met and complied with all other requirements of the statute, and the candidate was selected in accordance with all other requirements of law. Nor does anyone contend that this Court should impose a requirement that the meeting be held "within a reasonable time after the notice" or within a specific number of days after the notice, a requirement that the Legislature itself did not see fit to impose. And although we are inclined to believe that the Legislature has the constitutional power to require the committee to hold the meeting within a certain number of days after notice has been given and to provide that failure to do so will result in a failure to fill the vacancy, we need not pass on that issue.

We hold that the vacancy was properly filled and that plaintiff Catania was entitled to have his name on the ballot. The judgment of the Appellate Division is reversed.

*For Reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.