SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**<u>Cynthia Johnson v. Denise Wilkerson</u> (S-10-25) (091201)**

**Decided by Order September 19, 2025 -- Opinion Filed October 27, 2025**

**RABNER, C.J., writing for a unanimous Court.**

This matter involves an election dispute. The Court resolved the dispute through a September 19 order affirming the judgment of the Appellate Division. ___ N.J. ___ (2025). The Court's opinion explains the reasons for that decision.

On June 10, 2025, Denise Wilkerson won the Democratic primary for a council seat in the Borough of Roselle by three votes over Cynthia Johnson, the other Democratic candidate. Johnson requested a recount and a recheck on June 25. On July 10, the trial court denied the request for a recount but allowed for a recheck. After Johnson filed an emergent appeal, the Appellate Division summarily reversed the denial of the recount. A recount conducted on August 4 reduced Wilkerson's margin of victory from three to two votes. On August 7, Johnson filed an amended petition for an election contest in the trial court.

In a September 9 decision, the trial court found sufficient evidence that three voters had improperly been denied the right to vote and ordered a new election. Following a motion to clarify filed by the Attorney General, the trial court heard oral argument and reconsidered its decision. In a September 12 order, the court "remove[d] the requirement of a new election" and directed "that the candidate shall be selected pursuant to N.J.S.A. 19:13-20" by September 14. The Democratic County Committee selected Johnson as the party's nominee by a vote of 20 to 7.

Wilkerson asked the Appellate Division to reverse the trial court's September 12 order. The Appellate Division affirmed, upholding the use of the process outlined in N.J.S.A. 19:13-20, which led to Johnson's selection as the party's nominee.

Wilkerson filed an emergent application asking the Court to direct that both a special primary election and a special general election be held after Election Day. Alternatively, she requested that the names of both Democratic primary candidates be placed on the general election ballot.

**HELD:** Neither remedy Wilkerson seeks finds support in the statutory scheme.

1

1. Two statutes that apply to primary elections lie at the center of this matter: N.J.S.A. 19:13-18 (section 18) and N.J.S.A. 19:13-20 (section 20). Those sections govern here because (1) a majority of the votes cast in the primary election selected Wilkerson as the Democratic party's nominee, and (2) the trial court set aside the results of the election. Tracking the language of section 18, the court's ruling rendered Wilkerson's nomination "inoperative" and created a vacancy. Section 20 outlines how to fill that vacancy. Section 20(a)(4) applies when a vacancy arises "among candidates nominated at a primary election" -- the situation in this case. Although section 20 requires that the vacancy "shall occur not later than the 70th day before the general election" -- in this case, August 26 -- and the trial court's ruling resulting in a vacancy was issued on September 9, the Court agrees with the Appellate Division that delays in the trial court litigation warrant relaxation of the 70-day requirement. Section 20(a)(4) therefore applies and directs that the county committee of the political party "shall . . . select[]" the candidate in matters like this one. (pp. 8-12)

2. Wilkerson presents an impassioned argument that principles of equity and fairness require that "the people -- and not the party -- should be permitted to decide their elected representative." But the law does not provide for a special primary election after the date of the general election. Nor is there support for a special general election after a vacancy in the nomination process, let alone for holding such an election after Election Day. Certain statutes call for special elections for vacancies in offices, but none address a vacancy in a nomination for an office. In the alternative, Wilkerson asks the Court to order that both her name and Johnson's be placed on the ballot for the general election. That course would effectively transform the general election into a second primary election for the Democratic candidates. There is no statutory support for that alternative approach either. (pp. 12-14)

3. In several cases, the Court has broadly construed or relaxed the requirements of sections 18 and 20 to promote the right to vote. But those cases did not set aside the State's election laws and create new constructs not supported by the statutes. The remedies Wilkerson seeks -- hosting a new primary after the date of the general election or placing both Democratic primary candidates on the general election ballot -- go beyond what the statutes envision. The law provides no basis for the relief sought. And neither proposed option calls for an orderly general election to be held early in November consistent with the statutory scheme. (pp. 14-19)

4. The Court looks to the Legislature for guidance on such issues and has tried to act in accordance with legislative intent in this case by interpreting relevant laws. The Legislature, as always, has the authority to amend existing statutes. (p. 19)

**AFFIRMED.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion. JUSTICE FASCIALE did not participate.**

SUPREME COURT OF NEW JERSEY
S-10 September Term 2025
091201

Cynthia Johnson,

Respondent,

v.

Denise Wilkerson,

Applicant,

and

Union County Board of Elections;
Joanne Rajoppi, Union County Clerk;
and Lisette Sanchez, Borough of
Roselle Municipal Clerk,

Respondents.

On an Emergent Application
Pursuant to Rule 2:9-8.

| Decided by Order | Opinion Filed |
| --- | --- |
| September 19, 2025 | October 27, 2025 |

PEM Law, attorneys for applicant Denise Wilkerson
(Rajiv D. Parikh and Avi D. Kelin, of counsel, and Julia
Pudimott and Maximilian Ranzato, on the brief).

King Moench & Collins, attorneys for respondent
Cynthia Johnson (Matthew C. Moench, of counsel and on
the brief, and Alyssa Duffy Zara, on the brief).

1

Angela Cai, Acting Attorney General of New Jersey, attorney for respondent Union County Board of Elections (Sookie Bae-Park, Assistant Attorney General, of counsel, and Brian D. Ragunan, Deputy Attorney General, on the brief).

Union County Counsel's Office, attorneys for respondent Joanne Rajoppi, Union County Clerk (Bruce H. Bergen, Union County Counsel, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

This matter involves an election dispute. Denise Wilkerson won the Democratic primary for a council seat in Roselle by three votes. A recount and a court hearing followed. After the trial court found that several voters had been improperly denied the right to vote, the court invalidated the election. The court ultimately directed that the Democratic County Committee select the Democratic candidate for the general election, pursuant to N.J.S.A. 19:13-20 (section 20).

Wilkerson filed an emergency application for relief with the Appellate Division. She asked the appellate court, and now asks this Court, to direct that both a special primary election and a special general election be held after Election Day. Alternatively, she requests that the names of both Democratic primary candidates be placed on the general election ballot. Neither remedy finds support in the statutory scheme.

2

The Appellate Division denied Wilkerson's request for relief. Two days later, after additional briefing from the parties, we affirmed its judgment in a short order. This opinion explains the reasons for the Court's decision.

I.

The facts are not in dispute. On June 10, 2025, Denise Wilkerson won the Democratic primary election for the position of Council-Member-at-Large in the Borough of Roselle. She received 1,496 votes; Cynthia Johnson, the other Democratic candidate, received 1,493 votes. There were no candidates for the Republican primary.

Johnson requested a recount and a recheck on June 25.[1] On July 10, the trial court denied the request for a recount but allowed for a recheck. After Johnson filed an emergent appeal, the Appellate Division summarily reversed the trial court's judgment denying the recount. A recount conducted on August 4 reduced Wilkerson's margin of victory from three to two votes.

Days later, on August 7, Johnson filed an amended petition for an election contest in the trial court. She requested that the results of the election be vacated and that she be declared the winner. In the alternative, Johnson asked the court to order a new election.

---

[1] For a recheck, voting machines are "opened and the registering counters" are compared to "the election officers' returns." N.J.S.A. 19:52-6. At a recount, votes cast in an election are counted again. N.J.S.A. 19:28-1, -3.

3

The trial court held a testimonial hearing on September 3 and issued its decision on September 9. It found sufficient evidence that three voters had improperly been denied the right to vote and ordered a new election. The Attorney General, on behalf of the Union County Board of Elections, then moved to clarify the order and argued there was no statutory authority to direct that a special primary election be held.

On September 12, the trial court heard oral argument and reconsidered its decision. In an order issued that day, the court "remove[d] the requirement of a new election" and directed "that the candidate shall be selected pursuant to N.J.S.A. 19:13-20" by September 14. As set out more fully below, that statute provides, in part, that the county committee of the political party shall select the candidate for office when a vacancy occurs not later than seventy days before the general election.

On September 14, the Democratic County Committee selected Johnson as the party's nominee by a vote of 20 to 7. Wilkerson filed an emergent application with the Appellate Division the following day. She asked the appellate court to reverse the trial court's September 12 order and enter an order "directing that a special primary election be held in December [2025], and a special general election . . . be held in January 2026."

4

The Honorable Jack M. Sabatino, P.J.A.D., promptly issued a 12-page order on September 17, 2025. In its order, the Appellate Division analyzed the relevant statutes and case law and affirmed the trial court's judgment. In other words, the order upheld the use of the process outlined in section 20, which led to Johnson's selection as the party's nominee.

Wilkerson filed an application for emergent relief before the Supreme Court on September 17. She asked the Court "to reverse the 9/12/25 motion for reconsideration, in which the trial court . . . order[ed] that the democratic municipal committee, instead of the electorate, decide the democratic nominee." Her briefs before the Appellate Division and this Court make clear that she seeks to reinstate the relief the trial court initially ordered -- a new election. Specifically, she asks that a special primary election be held on December 10, 2025 and a special general election be conducted on January 27, 2026. In the alternative, she requests that the names of both candidates be placed on the ballot for the General Election.

We received briefs from the parties on September 18, 2025. We issued an abbreviated order the following day because of a looming statutory deadline: N.J.S.A. 19:63-9(a) directs that mail-in ballots "shall be forwarded or delivered at least 45 days before the day of the election." According to the County Clerk, ballots were "to begin to be mailed out" on September 20.

5

Our order affirmed the judgment of the Appellate Division and stated that an opinion would follow. ___ N.J. ___ (2025). The order also vacated the Appellate Division's stay, directed the Democratic Committee to comply with certain statutory requirements in N.J.S.A. 19:13-20(d)(2) and (e), and directed the County Clerk to proceed to distribute mail-in ballots in accordance with N.J.S.A. 19:63-9.

## II.

Wilkerson argues that when strict adherence to statutes would result in the disenfranchisement of lawful voters, equity must prevail over "rigid statutory formalism." She contends that neither N.J.S.A. 19:13-18 (section 18) nor section 20 "squarely govern this case."

According to section 18, when a nomination is "insufficient or inoperative, . . . the vacancy . . . may be filled" according to "the succeeding sections" in Title 19. Because this matter presents "extraordinary circumstances," Wilkerson contends that equity "requires this Court to craft a remedy" that ensures the voters, and not a political committee, decide the election.

Johnson maintains that the Democratic nomination for the council seat was "insufficient or inoperative" under section 18; that section 20 provides the

6

vacancy should be filled by the county committee; and that there is no statutory authority for a special primary election under Title 19.

The Attorney General, on behalf of the Union County Board of Elections, submits that the plain language of sections 18 and 20 establishes the appropriate procedures to address a vacancy in a nomination petition. The Attorney General takes no position on the outcome of this election contest but stresses that any relief should be based on the statutes and relevant case law.

III.

A.

Whether the above events fall with the scope of sections 18 and 20 presents a question of statutory interpretation. Our review, therefore, is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

We construe statutes that govern elections liberally to give effect to their purpose. Kilmurray v. Gilfert, 10 N.J. 435, 440-41 (1952). As in all election matters, we strive to fairly interpret election laws in a way that does not deprive citizens of their fundamental right to vote. N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 186-87, 190 (2002); Gangemi v. Rosengard, 44 N.J.

7

166, 170 (1965). Courts should also not construe statutes "so as to render an election void for technical reasons." Kilmurray, 10 N.J. at 440. As the Court has explained, we

> traditionally give[] a liberal interpretation to [election] law[s], "liberal" in the sense of construing [them] to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day.
>
> [Catania v. Haberle, 123 N.J. 438, 448 (1990).]

At the same time, courts must recognize "important state interests, including orderly electoral processes." Ibid.

B.

A "primary election" is "the procedure whereby the members of a political party . . . nominate candidates to be voted for at general elections." N.J.S.A. 19:1-1. Two statutes that apply to primary elections lie at the center of this matter. The first, N.J.S.A. 19:13-18, states in part that "if any nomination, be insufficient or inoperative, or if a nominee shall die, or for any reason vacate his nomination, the vacancy so occasioned may be filled in the manner outlined in the succeeding sections." (emphases added). Words in the election statutes like "nominee," "nomination," and "vacancy" "should be

8

given their common usage." Fiscella v. Nulton, 22 N.J. Super. 367, 375 (App. Div. 1952).

N.J.S.A. 19:13-20, a "succeeding" section, provides in turn that

> [i]n the event of a vacancy, howsoever caused, among candidates nominated at a primary election for the general election, which vacancy shall occur not later than the 70th day before the general election, . . . a candidate shall be selected in the following manner:
>
> . . . .
>
> [a.](4)  In the case of an office to be filled by the voters of a portion of a single county, the candidate shall be selected by those members of the county committee of the party wherein the vacancy has occurred who represent those portions of the county which are comprised in the district from which the candidate is to be elected.
>
> [(emphases added).]

### C.

We find that sections 18 and 20 govern this case.  Two facts that are clear from the above sequence of events compel that conclusion:  (1) a majority of the votes cast in the primary election selected Wilkerson as the Democratic party's nominee, and (2) after the trial court found that three primary voters had improperly been denied the right to vote, the court set aside the results of the election.  Tracking the language of section 18, the court's ruling rendered Wilkerson's nomination "inoperative" and created a vacancy.

9

Courts are required to read words in context and give them "their generally accepted meaning." N.J.S.A. 1:1-1. "Inoperative" commonly means "having no force or effect." Black's Law Dictionary 941 (12th ed. 2024); see also Webster's New International Dictionary 1166 (3d ed. 1981) ("not active"; "producing no effect"). Here, as a result of the court's order, the decision of the voters no longer had any force. Because the nomination was inoperative, we turn to section 20, which outlines how to fill the vacancy.

We first briefly acknowledge that section 18 states a vacancy "may" be filled in accordance with "the succeeding sections." But courts must take care not to overread the word "may." To suggest the term means the sections that follow are mere options that courts can decline to consider could render the rest of the statutory framework advisory at best or meaningless at worst.

There are problems with such an approach. First, under settled principles of statutory interpretation, courts cannot interpret a statute in a way that renders words in the statute surplusage. M.R. v. Dep't of Corr., 261 N.J. 322, 338 (2025); Hoffman v. Heck, 8 N.J. 397, 406-07 (1952); 2A Norman J. Singer, Sutherland Statutory Construction § 46:6 (7th ed. 1992). In this case, entire statutory sections would be rendered optional.

Second, treating section 20 as an option to consider would conflict with the mandatory language the Legislature included in the law. The statute's

10

introductory paragraph, for example, states that "[i]n the event of a vacancy, . . . a candidate <u>shall</u> be selected in the following manner." N.J.S.A. 19:13-20 (emphasis added). Subsection (a)(4), which applies here, states that "the candidate <u>shall</u> be selected . . . by the county committee." <u>Ibid.</u> (emphasis added). Mandatory instructions also appear in subsections (a)(1), -(2), and -(3), among other places in the statute. <u>See ibid.</u>

Not surprisingly, then, this Court has analyzed and applied the detailed statutory sections that follow section 18. It has not treated them as optional suggestions. <u>See, e.g.</u>, <u>Samson</u>, 175 N.J. at 191-94 (applying section 20 in the case of a vacancy); <u>Fields v. Hoffman</u>, 105 N.J. 262, 267-69 (1986) (same); <u>Kilmurray</u>, 10 N.J. at 440-42 (same). We do so here as well and return to the law's requirements.

Section 20(a)(4) applies when a vacancy arises "among candidates nominated at a primary election" -- the situation in this case. Here, Wilkerson was nominated, the court voided the result, and a vacancy resulted.

The statute also requires that the vacancy "shall occur not later than the 70th day before the general election" -- in this case, August 26. N.J.S.A. 19:13-20. To be sure, the trial court's ruling resulting in a vacancy was issued beyond the 70-day deadline, on September 9. We agree with the Appellate Division, however, that delays in the trial court litigation warrant a relaxation

11

of the 70-day requirement. Two challenges, the first filed on June 23, as well as an emergent appeal in between the two matters, were not fully resolved until September 12.

Section 20(a)(4) therefore applies and directs that the county committee of the political party "shall . . . select[]" the candidate in matters like this one. Ibid.

## D.

Wilkerson presents an impassioned argument that principles of equity and fairness require that "the people -- and not the party -- should be permitted to decide their elected representative." She urges the Court to craft a remedy that allows the electorate to choose their representative. Her argument relies generally on the principle that election laws should be "liberally construed to preserve the franchise." In applying that maxim, though, courts liberally interpret statutes; they do not set them aside.

With that in mind, we first consider the relief Wilkerson seeks. She asks the Court to declare a special primary election on December 10, 2025, followed by a special general election on January 27, 2026. But there is no support in the statute for either.

General elections are ordinarily held early in November. N.J. Const. art. II, § 1, ¶ 1 ("General elections shall be held annually on the first Tuesday after

the first Monday in November; but the time of holding such elections may be altered by law. . . . Local elective officers shall be chosen at general elections or at such other times as shall be provided by law."). Aside from certain exceptions that do not appear to apply here, municipal general elections adhere to that timing. See N.J.S.A. 40:45-1, -2.

The law does not provide for a special primary election after the date of the general election. Nor is there support for a special general election after a vacancy in the nomination process, let alone for holding such an election after Election Day. Certain statutes call for special elections for vacancies in offices. See, e.g., N.J.S.A. 19:27-6 (for vacancies in the United States Senate and House of Representatives); N.J.S.A. 19:27-11 (for vacancies in county and municipal offices); N.J.S.A. 40A:16-1 to -23 (for vacancies in municipal offices). None address a vacancy in a nomination for an office.

In the alternative, Wilkerson asks the Court to order that both her name and Johnson's be placed on the ballot for the general election.[2] In other words, she requests that the same two Democratic candidates who faced off in the primary be allowed to compete against each other once again. That course would effectively transform the general election into a second primary election

_____

[2] The Appellate Division did not address this argument. The appellate court noted that Wilkerson "evidently" withdrew the "back-up alternative she had advocated to the trial court."

13

for the Democratic candidates. There is no statutory support for that alternative approach either. It would also mean, in practice, that Republican and Independent voters would help choose the winner in the equivalent of a second Democratic primary. Cf. Lesniak v. Budzash, 133 N.J. 1, 15, 16 (1993) (discussing "restricting participation in the candidate-selection process to members of a political party").

E.

In several cases, the Court has broadly construed or relaxed the requirements of sections 18 and 20. In doing so, it analyzed and liberally interpreted legislative enactments. It did not, however, create a new scheme not found in the statutes to conduct elections.

In Kilmurray, for example, James Murray, the Democratic candidate for register of deeds and mortgages in Hudson County, died on September 29, 1952. 10 N.J. at 438. The county committee selected a replacement the next day. Ibid. At the time, section 20 required that a vacancy had to "occur not later than thirty-seven days before the general election," and the county committee had to make its selection not later than 34 days before the general election. Id. at 438-39. Murray died 36 days before the general election; the county committee acted within the 34-day limit. Id. at 439, 441.

Murray had won a primary election, so the vacancy his death created set section 20 in motion. Had he been selected by direct petition, N.J.S.A. 19:13-19 instead would have required that a successor be nominated not later than 34 days before the general election. 10 N.J. at 439.

The Court liberally construed the statute and concluded "the county committee had the power to fill" Murray's vacancy, even though he passed away after the 37-day deadline. Id. at 441-42. The Court offered several reasons for its ruling. First, it explained that to hold otherwise would "destroy the statutory scheme by treating more favorably the filling of a vacancy among candidates nominated by direct petition rather than by a party primary election." Id. at 440. Second, the Court observed that the committee "made and filed its selection of a substitute within the time prescribed by statute." Id. at 441. Under the circumstances, treating the 37-day rule as "directory only" was "consistent with the statutory scheme." Id. at 441-42 (emphasis added). Finally, the Court noted its ruling was in the "public interest" in that it allowed the names of candidates of both political parties to be submitted to the voters. Id. at 441.

In Fields, the Court allowed Edward Fields to be listed on the general election ballot as a Democratic candidate for Borough Council in the Borough of Clayton. 105 N.J. at 263. The county committee selected Fields after a

primary election.  Id. at 265-66.  In that election, Democratic voters were asked to vote for two candidates to run for two seats in the general election. Id. at 264.  Only one candidate received enough votes to qualify.  Ibid.  Two write-in candidates came close to the minimum number of votes required by statute, but both fell short.  Id. at 264-65.  Because neither of those candidates nor anyone else received sufficient votes to be included on the ballot, the Court found that "a vacancy resulted."  Id. at 265.

To reach that conclusion, the Court applied principles set forth in sections 18 and 20.  Referring to the text of section 18, the Court noted "the legislature declared that an 'insufficient' nomination would produce a vacancy."  Id. at 268.  And the Court found that when voters have tried but failed to write in enough votes to select a candidate, "there has been an 'insufficiency' in the nomination."  Id. at 268-69.  That result, the Court concluded, triggered section 20 and empowered the county committee to select a candidate.  See id. at 267.

The Court noted that "a respectable argument [could] be made in the opposite direction" and acknowledged Justice Stein's dissent.  Id. at 270.  The dissent stressed that party committees could act only after a nominee had been selected and a vacancy later occurred.  Id. at 275 (Stein, J., dissenting).

16

Otherwise, the dissent observed, party officials may be afforded too much influence in selecting candidates. Id. at 277.

In the end, the majority explained its decision attempted "to discern the legislature's intent" and recognized "the legislature [was] free to correct our error or to clarify its view of the pertinent statutes." Id. at 272.[3]

In 2006, the Court in Samson allowed the Democratic State Committee to replace Senator Robert G. Torricelli on the general election ballot. 175 N.J. at 183. Torricelli withdrew his candidacy on September 30, 2002, with the general election scheduled for November 5, 2002. Id. at 184. His withdrawal took place outside the time limit in section 20. Id. at 191.

The Court initially reviewed general principles of election laws as well as the statutory framework. Id. at 186-94. It concluded the Legislature did not "intend[] to limit voters' choice in a case where there is sufficient time to place a new candidate on the ballot and conduct the [general] election in an orderly manner." Id. at 194. Accordingly, the Court liberally construed section 20 by relaxing the time limit for the State Committee to select a substitute candidate.

---

[3] The Legislature later "effectively overrul[ed the] holding in Fields. Catania, 123 N.J. at 441; see N.J.S.A. 19:13-20.1 (effective July 6, 1990). The Legislature amended the relevant statute to "foreclose[] the party from . . . selecting a candidate" when "a write-in effort is attempted in the primary but the number of votes is not sufficient to elect any candidate." Catania, 123 N.J. at 441. In such cases, the election is "to go forward without any candidate" from the party. Ibid.

Id. at 194, 199. As part of its analysis, the Court addressed the multiple steps necessary to ensure the general election could proceed in an orderly manner, in November, as scheduled. Id. at 194-97.

The above cases all liberally construed statutes to promote the right to vote. They allowed for rules to be relaxed with that aim in mind. And they recognized the importance of conducting elections in an orderly manner consistent with the statutory scheme. Equally important, they did not set aside the State's election laws and create new constructs not supported by the statutes.

Wilkerson thoughtfully stresses the importance of giving voters the opportunity to choose at the ballot box. The remedies she seeks, though -- hosting a new primary after the date of the general election or placing both Democratic primary candidates on the general election ballot -- go beyond what the statutes envision.

When courts liberally construe a statute, as they do with election laws, they still look at the law's terms. Here, the law provides no basis for the relief sought. And neither proposed option calls for an orderly general election to be held early in November consistent with the statutory scheme.

18

If the Court were to grant the relief requested, it is difficult to identify a reasonable, limiting principle to apply in future cases. When would it be appropriate for trial court judges to delay Election Day? When would it not?

We look to the Legislature for guidance on such issues. We have tried to act in accordance with legislative intent in this case by interpreting relevant laws. The Legislature, as always, has the authority to amend existing statutes.

## IV.

For the reasons outlined above, we affirm the judgment of the Appellate Division.


JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion. JUSTICE FASCIALE did not participate.

19