154 N.J. Super. 317 (1977)
381 A.2d 383
CORA O'NEILL ET AL., PLAINTIFFS-APPELLANTS,
v.
HARRY LERNER ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1977.
Decided November 17, 1977.
*319 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. David W. Conrad argued the cause for appellants.
Mr. Joseph A. Hayden, Jr. argued the cause for respondents (Messrs. Nulty and Hayden, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This appeal presents the question whether an action lies at the instance of members of a county political party committee to recover on behalf of the committee, against its disbursing and managing officers, funds alleged to have been disbursed by them for purposes other than those to which such expenditures are restricted by N.J.S.A. 19:5-5, and for other relief incidental thereto. The trial judge dismissed the complaint on the essential ground that the sole remedy for the stated grievance was resort to the administrative procedures created by the *320 New Jersey Campaign Contributions and Expenditures Reporting Act, N.J.S.A. 19:44A-1 et seq. ("campaign reporting act" hereinafter).[1] As we are in disagreement with that conclusion, we reverse.
Political party organizations are vital components of the governmental mechanism whereby the democratic processes of election of most public officials, federal, state, county and municipal, are conducted in this State. The organization, maintenance, powers and functions of such organizations are carefully regulated by statute. N.J.S.A. 19:5-1 et seq. Of particular relevance to this appeal is N.J.S.A. 19:5-5, which, until the adoption of the campaign reporting act in 1973, read as follows:
Any state committee, county committee or municipal committee, of any political party may receive and disburse moneys for the general purposes of maintaining such organization during the whole or any part of the year. The expenses for maintenance of organization shall be confined to the hiring of suitable rooms for meetings of such committee, for stationery, for hiring of necessary clerks, for the expenses of notices of the meetings of such committee, for giving publicity to the policies and candidates of their respective party organizations, and other expenses incidental to the maintenance of such organization.
Within twenty days after the day of the general election, the person who has had the custody of the moneys contributed to or on account of any state, county or municipal committee during the previous year shall file with the secretary of state in the case of the state committee, and with the county clerk in the case of the county or municipal committee, a statement of the amount of money received by or on behalf of such committee during the previous year, together with the names and addresses of the persons from whom the money was received, and also a statement of the purposes for which it was expended, itemized as to all items in excess of five dollars, and with a general statement as to the purposes for which the items less than five dollars were expended. The person making *321 such statement shall make affidavit that the same is true. [Emphasis supplied.]
This provision, which derives from L. 1930, c. 187, § 48, has two basic elements. The first paragraph specifies the permissible expenditures of such organizations; the second requires systematic, detailed public reporting of receipts and expenditures. However, N.J.S.A. 19:5-5 was amended by section 27 of the campaign reporting act so as to leave the first paragraph basically intact and to delete the second paragraph. The reporting requirements in the second paragraph were assimilated into the more comprehensive reporting system created by the campaign reporting act. There are no provisions in the campaign reporting act for the recapture for the benefit of a political party committee of any of its funds improperly disbursed for purposes not permitted by N.J.S.A. 19:5-5. The mentioned statute is simply a comprehensive receipts and expenditures reporting act which creates a New Jersey Election Law Enforcement Commission (ELEC) to administer its provisions.
Plaintiffs' verified complaint herein, filed June 2, 1976, asserts in Count II that "certain of the moneys collected [by defendants] which are, or should have become the property of the Essex County Democratic Committee, have been applied or expended for purposes unrelated to the maintenance of the Essex County Democratic Committee, and the conduct of campaigns of the Democratic candidates in the general election." This allegation broadly asserts a violation of N.J.S.A. 19:5-5. From the verified allegations and discovery made before dismissal of the action the following supporting evidence appears.
Defendant Lerner has been chairman of the committee since 1968. Hundreds of thousands of dollars have been collected for or on behalf of the committee since that time, with minimal accounting thereof to the membership. A limited inspection of the committee's financial records by an independent accountant showed "no filing system, no accurate *322 records, no control system * * *, no budget." The financial record keeping was described as "appalling." Up to February 1, 1974 there were "consistent weekly petty cash withdrawals in amounts generally ranging between $50 and $100." There was no record as to the purposes or uses of such moneys. There was an item, "Christmas" check, drawn in 1975, but no indication of the recipient or purpose. There were frequent purchases of bottles of liquor, signed for by Mr. Lerner, but no indication of their use for party purposes. Thousands of dollars were expended for dinners in various restaurants without any indication in the records of the relationship thereof to party business.
There were cash withdrawals for payment to party workers before election day but discrepancies between amounts withdrawn and amounts shown in signed acknowledgments of receipts of such sums by workers.
Large amounts of funds raised by the committee, notably through fund-raising dinners, have been funneled into an organization named Democratic Board of Governors Inc. This organization appears to have been formed by Mr. Lerner and associates of his, and it is not discernibly responsible to the committee. In 1974 the said Democratic Board of Governors Inc. received $100,000 from a dinner conducted by the committee, and in 1975, $50,000. The most recent reports of that organization showed a balance in its hands of $44,806.42. In reports by the committee to ELEC, the "Board" is described as an appendage of the committee, but it is alleged by plaintiff to be set up in such manner as to circumvent any control of it by the committee. Defendants' filed answer in this case asserts that the "Board" is for "the operation and maintenance of the headquarters" of the committee, but substantial purported expenditures by that organization are not apparently related to such purposes.
There is an expenditure of $25,445, explained in the records only as "Ad. Man. Adv.;" one for "legal expenditures' of $5,000 when no litigation was current, and periodic *323 withdrawals for Mr. Lerner labelled "salary." Plaintiffs question the legality of such a salary for a chairman.
Although the expenditures noted above may eventually be established to have been for purposes within the statutory authorizations under N.J.S.A. 19:5-5, we are satisfied that the motion papers demonstrate a substantial possibility that considerable amounts of expenditures were not so authorized.
Plaintiffs sought from defendants, by way of an order to show cause, a full and complete accounting of all receipts, expenses and disbursements of funds received by the committee since 1968. They also requested restitution of diverted funds and the appointment of a receiver pendente lite. On the return of the order the trial judge on June 4, 1976 ruled that there must first be an exhaustion of administrative remedies, and directed plaintiffs to lodge their complaints with ELEC, retaining jurisdiction in the interim. On June 25, 1976 ELEC filed a notice of public hearing and complaint against the committee, its chairman Harry Lerner and its treasurer Kenneth A. Clark. It alleged failure to make timely disclosure of contributions to fund-raising dinners and expenditures in connection therewith on the required reports for 1973, 1974 and 1975; failure timely to identify payees of currency expenditures in violation of sections 8 and 22 of the campaign reporting act, and failure timely to report campaign expenditures as to candidates supported by the committee in the 1975 General Election. The complaint was supplemented on July 19, 1976 by the allegation of other violations: failure to disclose information as to cash expenditures of approximately $80,000 with respect to the 1975 election, and failure to allocate sums properly among the candidates for the 1975 election. The violations of the campaign reporting act were essentially conceded by respondents and the question at the hearing was one of culpability. The hearing officer, although satisfied as to the sincerity of treasurer Clark, noted that while he had filed timely accountings for the fund-raising dinners in the fall of 1973 and 1974, he had neglected to do so at other times. *324 Aggregate fines were imposed by ELEC on the committee of $3,850 and on Clark of $500.
In subsequently rendering its decision dismissing the instant complaint, the trial judge stated that the campaign reporting act and the powers thereunder of ELEC, including that of reporting violations of that act to the Attorney General and the county prosecutors, represented an adequate remedy for plaintiffs' complaints. Insofar as the complaint sought "a detailed accounting" of the "financial workings and details" of the committee, the judge held the statutes did not impose an obligation for an accounting to the committee membership. The complaint was regarded as intended to invoke a judicial inquiry "into the internal affairs of" the committee, which the judge felt was inappropriate "in the exercise of judicial restraint." He found support for his position in language found in Deamer v. Jones, 42 N.J. 516 (1964).
As to the adequacy of the remedies available under the campaign reporting act to deal with plaintiffs' grievances, we can agree only in part. To the extent that plaintiffs complained of default of statutory reporting by the committee of receipts and expenditures, we agree with the trial judge that the statute contemplates a remedy initially through ELEC rather than the courts. It further appears that there is no positive statutory requirement of detailed accounting of committee expenditures to rank and file membership. But insofar as the complaint charged the fact of expenditures of committee funds for purposes contrary to the limitations of N.J.S.A. 19:5-5, as we have found above that it does, and seeks civil restitution of such funds to the committee by those responsible for their alleged diversion, there is no remedy available under the campaign reporting act, express or implied. If there is to be any remedy for such dereliction, it must be found in the general original jurisdiction vested in the Superior Court under the Constitution of 1947. Art. VI, § III, par. 2.
*325 We are aware of the tradition of judicial reluctance to become involved in the internal affairs of political parties, see Deamer v. Jones, supra, 42 N.J. at 520 ("Historically, courts have been most reluctant to interfere in intraparty controversies in the absence of the violation of a controlling statute or the infringement of a clear legal right"); Application of Leichter, 32 Misc.2d 234, 223 N.Y.S.2d 789 (Sup. Ct. 1961). We share such reluctance. But we are here faced with the express statutory enjoinder that the expenses of a party committee for maintaining the organization "shall be confined to" certain enumerated purposes. N.J.S.A. 19:5-5. If there is an allegation, colorably supported, as here, that a committee's managers are using its funds for purposes other than those so specified or such "other expenses incidental to the maintenance of such organizations," ibid., then the exception noted in Deamer, i.e., the presence of a controlling statute, requires the courts to overcome their reluctance over the subject matter of the litigation. See Malone v. Superior Court, 40 Cal.2d 546, 254 P.2d 517, 519 (Sup. Ct. 1953). We believe, moreover, that sound public policy in today's ambience with respect to public morality conduces to the same result.
Defendants urge that plaintiffs lack standing to bring this action, citing Kligerman v. Lynch, 92 N.J. Super. 373 (Ch. Div. 1966); Rogers v. State Comm. of Republican Party, 96 N.J. Super. 265 (Law Div. 1967). We do not regard either of those cases as in point. It seems self-evident that if defendants have committed a remediable wrong, there would be no persons more appropriate than plaintiffs as committee members to bring the matter to court. Cf. Malone v. Superior Court, supra, 254 P. 2d at 519-520.
We need not, at this point, undertake to delineate the procedures which may be employed by the trial court in the further prosecution of this action. We would, however, caution against any interference in the ongoing activities and functions of the committee in relation to the elective processes. We do not believe a receivership or custodianship *326 of the committee's funds is indicated at this stage, and certainly never with respect to funds being currently received and needed for the prosecution of its day-to-day responsibilities. The court may not operate or govern the committee, directly or indirectly.
Reversed.
NOTES
[1] Limited aspects of that act were held invalid in N.J. Chamber of Commerce v. N.J. Elec. Law Enforcem. Comm'n, 135 N.J. Super. 537 (Ch. Div. 1975) (presently on appeal to this court). The provisions relating to political party committees were held severable and valid. 135 N.J. Super. at 551.