694 A.2d 1080

PAMELA J. HAMMER AND DARRYL S. BECKMAN, PLAINTIFFS, v. N.J. VOICE, INC., A CONTINUING POLITICAL COMMITTEE, THE ELECTION FUND OF CRAIG REIDER AND RONALD RICHARDS A/K/A/ VISION FOR VOORHEES AND RICHARD A. ALAIMO ASSOCIATES A/K/A/ RICHARD A. ALAIMO ASSOCIATION OF ENGINEERS A/K/A/ RICHARD A. ALAIMO ENGINEERING ASSOCIATES A/K/A/ RICHARD A. ALAIMO ENGINEERING COMPANY, DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)
Camden County

Decided December 6, 1996.

*Charles Shimberg,* attorney for plaintiffs.

*Benjamin A. Levin,* attorney for defendant Election Fund of Craig Reider and Ronald Richards a/k/a Vision For Voorhees.

*Martin S. Ettin,* attorney for defendants Richard A. Alaimo Associates; Richard A. Alaimo Association of Engineers; Richard A. Alaimo Engineering Associates; Richard A. Alaimo Engineering Company and N.J. Voice, Inc.

HORNSTINE, J.S.C.

Plaintiffs seek injunctive relief against defendants, alleging violations of "The New Jersey Campaign Contributions and Expenditures Reporting Act" (*N.J.S.A.* 19:44A–1 through 47) (Reporting Act). The matter is brought before the Court in a summary action pursuant to *N.J.S.A.* 19:44A–22.1.

Plaintiffs, Pamela J. Hammer and Darryl S. Beckman are the candidates of the Democratic Party for seats on the Voorhees Township Committee which was contested in a general election on November 5, 1996 (election).

Plaintiffs' opponents, *inter alia,* in the election included Craig Reider and Ronald Richards, the candidate of the Republican Party. They are party litigants in this matter as The Election Fund of Craig Reider and Ronald Richards a/k/a Vision For Voorhees (V.F.V.).

Richard A. Alaimo Associates, Richard A. Alaimo Association of Engineers, Richard A. Alaimo Engineering Associates and Richard A. Alaimo Engineering Company (Alaimo Group) are all business entities that are defendants herein. They are owned, operated and/or controlled by Richard A. Alaimo (Alaimo).

Defendant, N.J. Voice, Inc. (NJV), is a continuing political committee as defined in *N.J.S.A.* 19:44A–3(n). N.J. Voice, Inc. is totally funded by Richard A. Alaimo and the Alaimo Group.

Plaintiffs have alleged that the respective defendants have made and/or accepted contributions in connection with the 1996 Voo-

rhees Municipal Election in a manner violative of the provisions of the Reporting Act. Plaintiffs have asserted irreparable harm unless the defendants are enjoined and restrained.

Campaign financing for municipal elections is regulated by the Reporting Act. It has been both in the public interest and the public policy of the State of New Jersey to limit political contributions to candidates for public office and to require the proper reporting of all contributions received and expenditures made to promote the election of a candidate for public office.

The legislative intent of the Reporting Act is incorporated in *N.J.S.A.* 19:44A–2:

> It is hereby declared to be in the public interest and to be the policy of the State to limit the campaign expenditures by candidates for public office and to require the reporting of all contributions received and expenditures made to aid or promote the nomination, election or defeat of any candidate for public office or to aid or promote the passage or defeat of a public question in any election and to require the reporting of all contributions received and expenditures made to provide political information on any candidate for public office, or on any public question.

In enacting the election finance laws, the Legislature's objective is "to fix 'the glare of the public spotlight' on *all* activities intended to affect the political process in this State." *N.J. Election Law Enforcement Commission v. Citizens To Make Mayor–Council Government Work,* 107 *N.J.* 380, 386, 526 *A.*2d 1069 (1987). "The manifest objective of the New Jersey Campaign and Expenditures Reporting Act is to identify and attempt to regulate the significant flow of substantial wealth aimed at affecting the outcome of elections, public questions and the legislative process." *N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Commission,* 135 *N.J.Super.* 537, 544, 343 *A.*2d 796 (Ch.Div.1975), *reversed on other grounds,* 155 *N.J.Super.* 218, 382 *A.*2d 670 (App.Div.1977), *modified on other grounds,* 82 *N.J.* 57, 411 *A.*2d 168 (1980).

Pursuant to the Reporting Act, an individual or corporation may not contribute money to a candidate which, in the aggregate, exceeds $1,500.00 per candidate per election, and a candidate may not knowingly accept contributions of money from a contributor

which, in the aggregate, exceeds $1,500.00 per candidate per election. (*see N.J.S.A.* 19:44A–11.3(a)).

A continuing political committee may not make a monetary contribution to a candidate which, in the aggregate, exceeds $5,000.00 per election, and a candidate may not knowingly accept a financial contribution from any continuing political committee source which, in the aggregate, exceeds $5,000.00 per election (*see N.J.S.A.* 19:44A–22(a)(2) and *N.J.S.A.* 19:44A–11.3(a)).

If a continuing political committee has received contributions or has made any contributions or expenditures in violation of the Reporting Act, the aggrieved candidate may, by filing a summary action in the Superior Court, apply for an Order directing the violators to show cause why the court should not grant injunctive relief.

*N.J.S.A.* 19:44A–22.1 states in pertinent part:

> If a political committee or continuing political committee, having been established or consisting of members or having received contributions in violation of this act, shall have made any contribution or expenditure in opposition to, or in furtherance of the defeat of, a candidate, that candidate may, in a summary action in the Superior Court, apply for an order directing that political committee or continuing political committee to show cause why the court should not grant such injunctive relief as the candidate may seek. The court shall decide the application within 48 hours of the filing thereof and, upon a proper demonstration of the candidate's entitlement thereto, shall grant appropriate injunctive relief against that political committee or continuing political committee.

Although the statute upon which this court's jurisdiction is based compels a decision within 48 hours of the filing of the complaint, all parties concurred that depositions and related discovery were essential. To that end, the court extended the time limitation in the interest of justice and to properly afford all parties the opportunity to properly demonstrate their respective legal position. Thereafter, the transcripts of all depositions were supplied to the court for its review. The court makes the findings of fact that follow from the relevant testimony.

Defendants Richard A. Alaimo Associates, Richard A. Alaimo Association of Engineers, Richard A. Alaimo Engineering Associates and Richard A. Alaimo Engineering Company are all New

Jersey corporations which are principally owned and controlled by Richard A. Alaimo. Mr. Alaimo is the president and Michael Miller is the Secretary–Treasurer and Controller for all four corporations. While each corporation has separate income and expense statements, there is no distinct physical separation of the operation of these corporations. All four corporations have their principal offices at 218 High Street in Mt. Holly and operate throughout nine buildings in Mt. Holly owned personally by Mr. Alaimo. The only exception is Richard A. Alaimo Engineering Associates which operates in Paterson as well. All decision-making with respect to the Alaimo Group is controlled by Mr. Alaimo.

Defendant New Jersey Voice, Inc. (NJV), is a continuing political committee wholly and exclusively funded by the Alaimo Group and controlled by Mr. Alaimo. All decision-making with regard to NJV is controlled by Mr. Alaimo, including sums donated to NJV by the Alaimo Group and sums disbursed by NJV. The treasurer for NJV is Michael Miller, the Secretary–Treasurer and Controller for all four corporations of the Alaimo Group.

Mr. Alaimo readily admits that the purpose of NJV was to contribute political donations to further the interests of the Alaimo Group. By utilizing a continuing political committee to accomplish this goal, Mr. Alaimo understood that he would be able to contribute greater sums to the various campaigns than could be accomplished by other means.

During the course of the 1996 campaign, the following political contributions were made that are pertinent herein:

| DATE | CONTRIBUTION | AMOUNT |
|------|-------------|--------|
| 8/25/96 | Alaimo Associates to Reider & Richards | $ 2,000 |
| 9/9/96 | Alaimo Group to N.J.V. | $40,000 |
| 9/24/96 | Alaimo Associates to Camden County GOP | $ 2,500 |
| Sometime 1996 | Alaimo Associates to Camden County GOP | $ 450 |
| 10/11/96 | N.J.V. to Reider & Richards | $10,000 |
| 10/15/96 | Camden County GOP to Reider & | |

|  |  |  |
|---|---|---|
|  | Richards | $ 9,270 |
| 10/20/96 | Reiner & Richards return of contribution to |  |
|  | Alaimo Associates | $ 2,000 |

Prior to consideration of the substantive issues, the court must consider procedurally whether injunctive relief should be granted, given the parameters of *N.J.S.A.* 19:44A–22.1.

Injunctive relief is an extraordinary remedy utilized to forbid and prevent irreparable injury and is administered with discretion upon consideration of justice, equity, and morality in a given case. *See Coskey's T.V. & Radio Sales v. Foti,* 253 *N.J.Super.* 626, 639, 602 *A.*2d 789 (App.Div.1992). An injunction will issue only upon a showing that: (1) the moving party will suffer immediate and irreparable harm if the injunction does not issue; (2) the claim for relief is based upon an established legal right; (3) the moving party has a substantial likelihood of success on the merits of the case; and (4) the equities preponderate in favor of the movants. *Crowe v. DeGioia,* 90 *N.J.* 126, 133–34, 447 *A.*2d 173 (1982).

Plaintiff's complaint and order to show cause were filed on Friday, November 1, 1996. The Voorhees municipal election was Tuesday, November 5, 1996. Due to the close proximity of the filing date to the election, it was impossible to complete discovery and adjudicate the matter prior to Election Day. The irreparable harm alleged in Plaintiff's complaint states that "unless the defendants are enjoined and restrained from so violating the provisions of the Act, the plaintiffs shall be irreparably harmed in their right to participate in a fair, honest and legally funded 1996 Voorhees Municipal Election". At this juncture the election has since passed.

Consequently, the threat of irreparable harm alleged has been rendered moot. To that end, the issue that must be addressed is whether the Superior Court has jurisdiction under the Reporting Act and, more particularly, *N.J.S.A.* 19:44A–22.1, if irreparable harm does not exist.

As this court recognized in its decision in *Markwardt et al. v. New Beginning, et. al.*, Docket No. L–7766–96 (Law Div. Oct. 18, 1996), the summary action under *N.J.S.A.* 19:44–22.1 is only intended to provide extraordinary injunctive relief to remedy irreparable harm prior to the election: "In enacting *N.J.S.A.* 19:44–22.1, the Legislature recognized that the complaint, investigation, and enforcement procedures of the Election Law Enforcement Commission (hereinafter ELEC) were insufficient to timely protect a candidate's rights. 'ELEC' could not act swiftly enough, upon the filing of a complaint, to keep irreparable injury from occurring *prior to the election.*" *Markwardt, supra*, slip op. at 17. Inasmuch as the election has passed and the threat of irreparable harm is no longer present, the court's enforcement power is severely restricted. The court's review of the Reporting Act in its totality envisions the proper forum for resolution of this dispute in the administrative agency charged with enforcement—the Election Law Enforcement Commission.

The Reporting Act delegates to 'ELEC' a general power to determine whether a violation has occurred:

> Upon receiving evidence of any violation of this section, the Election Law Enforcement Commission shall have power to hold, or to cause to be held under the provisions of subsection d. of this section, hearings upon such violation and, upon finding any person to have committed such a violation, to assess such penalty, within the limits prescribed in subsection a. of this section as it deems proper under the circumstances, which penalty shall be paid forthwith into the State Treasury for the general purposes of the State.
>
> [*N.J.S.A.* 19:44A–22(b).]

Pursuant to *N.J.S.A.* 19:44A–22(d), 'ELEC' is empowered to designate a hearing officer to hear complaints alleging violations of the Reporting Act; the hearing officer "shall take testimony, compile a record and make factual findings," and shall submit those findings to the commissioner, who will then make a determination based on a complete factual record. *N.J.S.A.* 19:44A–22(d); *see also N.J.A.C.* 19:25–17.1 (regulating penalty proceedings undertaken by 'ELEC' pursuant to, *inter alia, N.J.S.A.* 19:44A–22). 'ELEC' is thus empowered by the Reporting Act to fully investigate any alleged violations of the statute.

As it relates to the issue of jurisdiction in post-election matters, the legislative intent appears to yield to the expertise of 'ELEC'. Cognizance is given to *N.J.S.A.* 19:44A–22(f) which states in pertinent part:

> In addition to any penalty imposed [by ELEC] pursuant to subsection e. of this section, a person holding any elective public office shall forfeit that public office if the Election Law Enforcement Commission determines that the cumulative total amount of the illegal contributions was more than $50,000.00 and that the violation *had a significant impact on the outcome of the election.*

**(emphasis supplied)**

Although this provision of the Reporting Act is not directly on point, it certainly appears as though the remedy contemplated should only be exercised by 'ELEC' once the election has passed.

Transfer of this case to 'ELEC' accords with the established rule that, in general, "available and appropriate 'administrative remedies should be fully explored before judicial action is sanctioned.'" *Abbott v. Burke,* 100 *N.J.* 269, 296, 495 *A.2d* 376 (1985), *appeal after remand,* 119 *N.J.* 287, 575 *A.2d* 359 (1990) (quoting *Garrow v. Elizabeth General Hospital and Dispensary,* 79 *N.J.* 549, 558, 401 *A.2d* 533 (1979)); see also *Board of Education of East Brunswick Township v. Township Council of East Brunswick,* 48 *N.J.* 94, 102, 223 *A.2d* 481 (1966) ("generally, the available administrative remedies must be exhausted before judicial relief is sought"). Although administrative exhaustion is not an absolute jurisdictional requirement, in "any case amenable to administrative review, . . . upon a defendant's timely petition, the trial court should consider whether exhaustion of remedies will serve the interests of justice." *Abbott,* 100 *N.J.* at 297, 495 *A.2d* 376.

Exhaustion of plaintiffs' remedies before 'ELEC' will serve the interests of justice in this case. An exhaustion requirement ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area and allows the parties to create a factual record necessary for meaningful appellate review. Moreover, since the agency decision may satisfy the parties, resort

to the courts may thus be obviated. *Abbott,* 100 *N.J.* at 297–98, 495 *A.2d* 376; *City of Atlantic City v. Laezza,* 80 *N.J.* 255, 265, 403 *A.2d* 465 (1979). Exceptions to the exhaustion requirement exist when the administrative remedies would be futile, when irreparable harm would result, or when an overriding public interest calls for a prompt judicial decision. *See Garrow,* 79 *N.J.* at 561, 401 *A.2d* 533. In this case, an adequate remedy for any alleged violations of the Reporting Act is available before 'ELEC'. *See O'Neill v. Lerner,* 154 *N.J.Super.* 317, 324, 381 *A.2d* 383 (App.Div.1977) (noting that where a remedy was available under the Reporting Act, the parties should resort in the first instance to 'ELEC' rather than to the courts).

Administrative agencies "have the authority to determine matters within the special province of their regulatory jurisdiction and expertise." *Desilets v. Clearview Regional Board of Education,* 137 *N.J.* 585, 594, 647 *A.2d* 150 (1994). Under the present circumstances, this court will defer to the regulatory jurisdiction and expertise of 'ELEC'. The principles of comity and deference to cognate tribunals are designed to assure that a controversy, or its most critical facets, will be resolved by the forum which, comparatively, is in the best position by virtue of its statutory status, administrative competence and regulatory expertise to adjudicate the matter. *Hinfey v. Matawan Regional Bd. of Education,* 77 *N.J.* 514, 531–32, 391 *A.2d* 899 (1978).

This Court recognized in *Markwardt, supra,* that *N.J.S.A.* 19:44A–22.1 provides an extraordinary procedure for obtaining injunctive relief prior to the election, and that the summary action should not intrude on the jurisdiction of 'ELEC' except in special circumstances. Such circumstances are not present in this case. Accordingly, plaintiff's complaint is dismissed without prejudice, as the court lacks enforcement power under the Reporting Act.