701 A.2d 706

JACK MARKWARDT AND TOM FANELLI, PLAINTIFFS–RESPON-
DENTS, v. NEW BEGINNINGS, A CONTINUING POLITICAL
COMMITTEE, NEW HORIZONS, A CONTINUING POLITICAL
COMMITTEE, DEFENDANTS–APPELLANTS, AND REGULAR
NEW JERSEY DEMOCRATIC TRI–COUNTY, A CONTINUING
POLITICAL COMMITTEE, THE VOORHEES DEMOCRATIC
CLUB, A CONTINUING POLITICAL COMMITTEE, VOOREES
2000 COMMITTEE, A CONTINUING POLITICAL COMMITTEE,
UNKNOWN CONTINUING POLITICAL COMMITTEES 1–25,
FICTITIOUS PERSONS, AND GGIV–ELECTION FUND OF
PAMELA J. HAMMER AND DARRYL BECKMAN, A JOINT
CAMPAIGN COMMITTEE, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 17, 1997—Decided October 8, 1997.

524

Before Judges BAIME, BROCHIN and BRAITHWAITE.

*George J. Botcheos* argued the cause for appellants.

*John J. Markwardt* argued the cause for respondents (*Markwardt & Sander*, attorneys; *Mr. Markwardt*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal presents novel questions under the New Jersey Campaign Contribution and Expenditure Reporting Act (*N.J.S.A.* 19:44A–1 to –47). We will describe the Act in detail later in this opinion. Suffice it to say, the Act contains stringent disclosure requirements and restricts the amounts individuals, corporations, businesses, and continuing political committees may contribute in primary, general, and special elections. The New Jersey Election Law Enforcement Commission (ELEC) is charged with administering the provisions of the Act and imposing sanctions for viola-

tions. However, a candidate may bring a summary action in the Superior Court and obtain injunctive relief against a continuing political committee that has made contributions in violation of the Act's requirements in order to defeat the complainant's candidacy. At issue is the nature and extent of the court's jurisdiction under the Act. Also in question is the interpretation of the Act's prohibition against agreements to control the contributions of continuing political committees.

 We hold that a candidate in a general election may institute a summary action in the Superior Court challenging the legality of campaign contributions received by an opponent in a primary election, at least where the challenged contributions have been transferred for use in the general election. We also conclude that individuals, corporations, businesses and continuing political committees may not evade the Act's restrictions on the amounts of contributions that can be donated by entering into agreements to funnel monies to a candidate or to his or her campaign committee.

## I.

Plaintiffs are members of the Voorhees Independent Party and were candidates in the 1996 general election for two seats on the Voorhees Township Committee. On September 12, 1996, plaintiffs brought a summary action in the Law Division in which they claimed that Remington and Vernick, Inc. (R & V), a company that served as engineer for the Township Planning Board since the Democratic Party assumed control of the Township Committee, had violated the Act's restrictions on campaign contributions by funneling monies through New Horizons and New Beginnings, two continuing political committees it created and controlled, to the joint campaign committee of their opponents, Pamela Hammer and Darryl Beckman. The unlawful scheme depicted by plaintiffs in their complaint and their proofs consisted of a contorted labyrinth of continuing political committees designed to serve as conduits for the flow of campaign contributions to Hammer and Beckman. Among the protagonists were New Horizons, New

Beginnings, the Voorhees 2000 Committee, the Voorhees Democratic Club, and the Good Government in Voorhees Election Fund of Pamela Hammer and Darryl Beckman. The evidence presented at the hearing was both complex and confusing. We recount only the essential facts.

The general election for the Voorhees Township Committee was to be held on November 5, 1996. Plaintiffs' opponents, who were uncontested in the Democratic primary election, included Hammer and Beckman. Hammer formed the Good Government in Voorhees Election Fund of Pamela Hammer and Darryl Beckman (Good Government Fund), a joint candidate committee, for the purposes of obtaining contributions and disbursing campaign expenses.

In 1989, R & V created New Horizons and New Beginnings, two continuing political committees, for the articulated purpose of making contributions to candidates who "believed in good government," and who "would help the engineering profession." As we noted, R & V was the engineer to the Township Planning Board, and derived a "sizable amount of money" from contracts awarded without public bidding from the Township Committee. It is undisputed that New Horizons and New Beginnings were fully funded by R & V and that R & V made all the decisions as to which candidates would receive contributions from those entities as well as the amounts and dates of the contributions.

The record clearly discloses that New Horizons and New Beginnings served as R & V's alter ego. For example, the treasurer of New Horizons was Louis Doggett, Jr. Doggett was a former R & V employee and also Craig Remington's uncle. Debra Fenton, also a former R & V employee, was appointed as the treasurer of New Beginnings. Neither Fenton, nor Doggett, exercised any control over the amounts of money contributed by New Horizons or New Beginnings and neither made any decisions regarding the disbursement of funds.

At a court-ordered deposition, Fenton testified that she never prepared the quarterly financial forms required by ELEC. In-

stead, R & V would ask Fenton to sign the ELEC forms in blank and then return them to R & V to be completed and sent to the Commission. Fenton admitted that she was not aware of any legal limitations on the amount of money that a continuing political committee could contribute to a campaign committee or to another continuing political committee, or that limitations existed as to the amount of money that a business or individual could contribute to a campaign committee. Fenton also testified that R & V mailed checks to her and directed her to sign them with the payee line already completed. Fenton never reconciled the checking ledger and did not maintain any financial statements. The only deposit Fenton ever made on behalf of New Beginnings was when she opened a bank account for the organization.

Similarly, Doggett never made any deposits on behalf of New Horizons and never examined any of that organization's bank statements. Doggett would merely forward everything he received on behalf of New Horizons to R & V. Doggett never filled out an ELEC form, or a check, and never attempted to reconcile the checking ledger. Indeed, evidence was presented indicating that R & V personnel commonly "forged" Doggett's signature. Like Fenton, Doggett had no knowledge of the campaign contribution limits under the Act.

Craig Remington, one of the two principal owners of R & V, was deposed regarding the activities of New Horizons and New Beginnings. Remington stated that the committees were created by R & V's attorneys in 1989 for the purpose of contributing to candidates who would promote the goals of the engineering profession. Remington stated that either he or Vernick, his partner, made all decisions pertaining to political contributions. Remington admitted that R & V's business department handled the finances for both New Horizons and New Beginnings. He further admitted that the business department, and not Fenton or Doggett, completed the quarterly ELEC forms required under the Act.

Regarding the contribution limits, Remington stated that he was aware of the Act's restrictions and, in 1993, when the limits were

statutorily increased, had discussed the new limitations with R & V's attorneys. Remington knew that a corporation, such as R & V, was limited to contributions of $1500 per candidate, per election. When asked whether R & V controlled the political donations made by New Horizons and New Beginning, Remington responded, "I don't discuss my contributions with anybody." But, Remington admitted that R & V made contributions to New Horizons and New Beginnings, and that either he or Vernick would direct the funds to other committees or to the Democratic campaign.

Plaintiff's complaint named as defendants several other registered continuing political committees, and alleged that they were involved in a "contribution conspiracy" with New Horizons and New Beginnings. Those committees included the Voorhees 2000 Committee, the Voorhees Democratic Club and the Regular New Jersey Democratic Tri–County. Plaintiffs contended that from 1993 to the date the complaint was filed, New Horizons and New Beginnings, in concert with the other continuing political committees, created an intricate web through which campaign contributions were funneled to the Democratic Party. In support of this contention, plaintiffs presented the ELEC forms filed by these entities over a three year period. Plaintiffs asserted that the repeated transfer of campaign contributions from one committee to the other revealed an implicit agreement respecting how the monies were ultimately to be spent. We need not recount this evidence at length. It suffices to note that the ELEC forms confirm plaintiffs' allegation that R & V controlled New Horizons and New Beginnings, directed the manner in which those entities were to make political contributions, and used both organizations as mere conduits for evading the restrictions of the Act and funneling monies to the candidates of their choice.

Although substantial evidence was presented showing a nexus between the Voorhees 2000 Committee, the Voorhees Democratic Club and the Hammer and Beckman Good Government Fund, the link between these entities and New Horizons and New Begin-

nings was far more tenuous. The chairman of the Voorhees 2000 Committee, Paul Gigantino, was apparently an employee of Regency Real Estate Management Services, a corporation owned in part by Hammer. The treasurer of the Voorhees 2000 Committee, Louis Sampoli, served as corporate counsel to Regency. Evidence was presented indicating that Stuart Platt, the treasurer of the Voorhees Democratic Club and chairman of the 1996 Democratic campaign for Hammer and Beckman, solicited monies from Sampoli prior to the creation of the Voorhees 2000 Committee, seeking to fund a political publication that supported the election of Hammer and Beckman. Curiously, the money obtained from Sampoli was treated as an "in kind" contribution, not by the Voorhees Democratic Club, but by the Hammer and Beckman campaign committee, the Good Government Fund. R & V contributed $1,500 to the Voorhees 2000 Committee and New Horizons contributed $3,500. These amounts constituted more than one-half of the total contributions received by the Voorhees 2000 Committee. In his deposition testimony, Remington admitted that he did not know the policy positions of the Voorhees 2000 Committee or its objectives or goals. He conceded that R & V's $1,500 contribution to the Voorhees 2000 Committee and New Horizon's $3,500 contribution was "probably going to be used in the campaign."

Against this factual backdrop, the Law Division found that R & V exercised complete control over New Horizons and New Beginnings and utilized these entities to circumvent the Act's restrictions on campaign contributions. The court was far more equivocal in its findings respecting the relationship between R & V, New Horizons, New Beginnings and the Voorhees 2000 Committee. The court made no specific finding that R & V either exercised control over the Voorhees 2000 Committee or had the power to direct to whom that entity's campaign donations were to be contributed. Instead, the court concluded that R & V had the capacity, along with others, to "influence" the Voorhees 2000

Committee. Without further explication, the court apparently determined that R & V used its "influence" over the Voorhees 2000 Committee in order to evade the Act's restrictions on campaign contributions. The court concluded that R & V either directly or indirectly through the continuing political committees, made unlawful contributions of $5,000 in the primary election and $5,000 in the general election. Unfortunately, the trial court's decision is unclear as to how these amounts were determined.[1] We assume that the trial judge treated the contributions originating with New Horizons and New Beginnings as if they had been made to the Good Government Fund by R & V itself. Viewed in this fashion, R & V contributed a total of $8,000 to the Good Government Fund during the Democratic primary election and

---

[1] The parties stipulated, and the trial court noted, that the following transactions transpired between R & V, New Horizons, New Beginnings and the various other committees:

### Primary Election

| Entity | Amount | Date |
| --- | --- | --- |
| R & V to Good Government Fund | 1,000 | 12/14/95 |
| R & V to Good Government Fund | 1,500 | 7/13/95 |
| New Beginnings to Good Government Fund | 1,500 | 7/13/95 |
| New Beginnings to Good Government Fund | 2,000 | 5/17/96 |
| New Horizons to Good Government Fund | 2,000 | 5/10/96 |
| TOTAL | 8,000 | |

### General Election

| Entity | Amount | Date |
| --- | --- | --- |
| New Horizons to Voorhees 2000 | 3,500 | 6/20/96 |
| R & V to Voorhees 2000 | 1,500 | 6/21/96 |
| R & V to Good Government Fund | 3,000 | 8/30/96 |
| TOTAL | 8,000 | |

According to the Act, R & V could not make more than $1,500 in contributions per candidate, per election. *See N.J.S.A.* 19:44A-11.3(a).

$8,000 during the general election.[2]

■ The court entered an order enjoining R & V, New Horizons and New Beginnings from making any further contributions, either directly or indirectly, to the Good Government Fund. The order contained other provisions dealing with the Voorhees Democratic Club and the Voorhees 2000 Committee which are not relevant to this appeal. The court approved a request that the excess contributions be donated to certain agreed upon charities.[3]

## II.

A description of the statutory scheme is necessary for a full understanding of the issues presented. The Act was passed in 1973. The articulated objectives, as expressed in the legislative findings, were "to limit political contributions and to require the reporting of all [amounts] received and expenditures made to aid or promote the nomination, election or defeat of any candidate for public office or to aid or promote the passage or defeat of a public question...." *N.J.S.A.* 19:44A–2. The Act applies to "all primary [and] general elections," *N.J.S.A.* 19:1–1, and covers any "candidate ... seeking election to a public office," *N.J.S.A.* 19:44A–3(c).

---

[2] Apparently, the trial court treated the contributions made by R & V and New Horizons to the Voorhees 2000 Committee as if R & V were making contributions directly to the Good Government Fund.

[3] The record does not indicate that the Law Division's judgment was stayed pending appeal. Thus, there is a possibility that the issues raised are moot. We are, nevertheless, of the view that the questions presented are of sufficient importance as to require appellate review and resolution. Courts may hear and decide cases which are technically moot where issues of great public importance are involved. *See Brady v. Department of Personnel,* 149 *N.J.* 244, 253, 693 *A.2d* 466 (1997). Moreover, the questions raised "are capable of repetition yet likely to evade review." *Ibid.; see also In re J.I.S. Indus. Serv. Co. Landfill,* 110 *N.J.* 101, 104–05, 539 *A.2d* 1197 (1988); *In re Conroy,* 98 *N.J.* 321, 342, 486 *A.2d* 1209 (1985). Consequently, mootness of the case is not a bar to our exercise of jurisdiction.

The Act places restrictions on the amount of money that may be contributed in any one election. *See N.J.S.A.* 19:44A–11.3 to 11.5. Critical to the questions presented in this case are the limitations placed on the contributions of business entities and continuing political committees. A business may contribute $1,500 per candidate, per election to a candidate committee. *N.J.S.A.* 19:44A–11.3(a). Therefore, if there are two candidates from the same party running for election, a business may contribute a total of $3,000. If there is a primary election within a party, the business may contribute another $3,000 to the candidates' committee. These limits also apply to individual contributors.

Contribution limits for a continuing political committee, however, differ from those applicable to an individual or corporation. A "continuing political committee" may contribute up to $5000 per candidate, per election to a candidate committee, for a total of $10,000 if two candidates are represented. *N.J.S.A.* 19:44A–11.3(b)(1)(b). A continuing political committee is defined as "any group of two or more persons acting jointly, or any corporation, partnership, or any other incorporated or unincorporated association ... which in any calendar year contributes or expects to contribute at least $2,500 to the aid or promotion of the candidacy of an individual ... for elective public office...." *N.J.S.A.* 19:44A–3(n).

Although the Act places restrictions on the amounts individuals, businesses and continuing political committees may contribute to campaign committees, the Act contains no restrictions on the amounts individuals and businesses may contribute to continuing political committees. So too, there are no statutory limits on the number of continuing political committees a business or individual may create. *See N.J.A.C.* 19:25–4.5. Besides the $5,000 limit on direct contributions by a continuing political committee to a candidate committee, the only other relevant restriction is that a continuing political committee may not contribute more than $5,000 per year to another continuing political committee. *N.J.S.A.* 19:44A–11.5; *N.J.A.C.* 19:25–11.2.

The juxtaposition of these restrictions, at first glance, seems to create an anomaly by allowing businesses and individuals to circumvent restrictions placed on political donations by creating continuing political committees to serve as conduits through which unlimited campaign contributions can be funneled. To guard against that possibility, the Legislature enacted *N.J.S.A.* 19:44A-22(a)(2), which provides in pertinent part:

No person shall **willfully and intentionally** agree with another person to make a contribution to a candidate, candidate committee, joint candidates committee, political committee, continuing political committee, ... with the **intent, or upon the condition, understanding or belief,** that the recipient candidate or committee shall make or have made a contribution to another such candidate or committee ... **A finding of a violation of this paragraph shall be made only upon clear and convincing evidence.** [Emphasis supplied]

We will return to this section later in our opinion. We merely note at this point that *N.J.S.A.* 19:44A-22(a)(2) was designed to preserve some degree of independence in continuing political committees by barring contributors from designating the ultimate recipient of their political donations.

As we have mentioned earlier, ELEC is empowered to administer the Act's provisions and to determine whether a violation has occurred. ELEC is thus authorized to engage in investigations, *see N.J.S.A.* 19:44A-22(d), conduct hearings, *see N.J.S.A.* 19:44A-22(b), assess penalties, *see N.J.S.A.* 19:44A-22(c), and compel forfeiture of office where the violation significantly affected the outcome of the election, *see N.J.S.A.* 19:44A-22(f).

In 1993, the Legislature added *N.J.S.A.* 19:44A-22.1, which affords an aggrieved candidate the right to institute a summary action in the Superior Court for injunctive relief. That section states:

If a political committee or continuing political committee, having been established or consisting of members or having received contributions in violation of this act, shall have made any contribution or expenditure in opposition to, or in furtherance of the defeat of, a candidate, that candidate may, in a summary action in the Superior Court, apply for an order directing that political committee or continuing political committee to show cause why the court should not grant such injunctive relief as the candidate may seek. The court shall decide the application within 48 hours of the filing thereof and, upon a proper demonstration of the candidate's

entitlement thereto, shall grant appropriate injunctive relief against that political committee or continuing political committee.

[*Ibid.*]

It is against this statutory and regulatory backdrop that we consider the issues presented. Defendants contend: (1) plaintiffs lacked standing to contest the legality of contributions made in the Democratic primary election, (2) the Law Division did not have subject matter jurisdiction, and (3) the court's factual findings are not supported by sufficient credible evidence present in the record. We examine these arguments *seriatim.*

## III.

Defendants' attack upon plaintiffs' standing rests upon the wording of the section affording a candidate the right to bring a summary action in the Superior Court. *N.J.S.A.* 19:44A–22.1. The operative statutory language permits a candidate to bring such an action against a continuing political committee [4] that has "received contributions in violation of [the] Act [and] ... [has] made any contribution or expenditure in opposition to, or in

---

[4] Read literally, *N.J.S.A.* 19:44A–22.1 permits an aggrieved candidate to bring a summary action only against a "political committee" or "continuing political committee." Where, as here, an individual or business is alleged to be a key member of a conspiracy to violate the Act's requirements, the court should order the plaintiff to join as a party defendant that person or entity. *R.* 4:28–1. R & V should have been joined as a defendant because "complete relief" could not be accorded without that entity's appearance. We note in that respect that the injunction issued by the trial court enjoined R & V from making additional contributions. It is fundamental that "an injunction will not be granted that directly affects the rights of persons who are not parties and who are not represented in the action." *Slater v. Slater,* 223 *N.J.Super.* 511, 519, 539 *A.*2d 290 (App.Div.1988); *see also Alemite Mfg. Corp. v. Staff,* 42 *F.*2d 832, 833 (2d Cir.1930). "In every judicial proceeding it is essential that the person whose rights are to be effected should be a party and have an opportunity of making a defense; and he must be brought in by process, which need not be a subpoena or other writ, but may be an order or notice." *In re Hayden,* 101 *N.J. Eq.* 361, 365, 139 *A.* 328 (Ch.1927).

We nevertheless find no prejudice to R & V. New Horizons and New Beginnings served as R & V's alter ego. R & V controlled their defense in this action. We thus find no basis for corrective action.

furtherance of the defeat of [an aggrieved] candidate." *Ibid.* The contested contributions in this case were made immediately prior to the Democratic primary election and continued through the date this action was commenced. Because plaintiffs were not candidates in the primary election, defendants contend that they lacked standing to challenge in the Superior Court the legality of those contributions made prior to the general election.

We reject this argument. The statute does not draw a distinction between primary and general elections, but only refers to candidates generally. Clearly, plaintiffs were candidates for public office under the Act's definitional section.[5] *N.J.S.A.* 19:44A–3(c). Moreover, the challenged contributions were made in an uncontested primary election, and were made "in furtherance of the defeat" of plaintiffs, who were candidates in the general election. Further, at least a portion of the monies were ultimately transferred for the use of Hammer and Beckman in the general election.

The Act's restrictions on campaign contributions may not be so facilely evaded. We construe *N.J.S.A.* 19:44A–22.1 consonant with its obvious purpose—to afford an aggrieved candidate a judicial remedy in order to prevent irreparable injury. We are entirely satisfied that plaintiffs had the requisite standing to seek judicial relief under the statute.

## IV.

■ We also reject defendants' related argument that the Law Division lacked subject matter jurisdiction. Defendants assert

---

[5] A "candidate," as defined by the Act, is

(1) an individual seeking election to a public office of the State or of a county, municipal or school district at an election; except that the term shall not include an individual seeking party office; and (2) an individual who shall have been elected or failed of election to an office, other than a party office, for which he sought election and who receives contributions and makes expenditures for any purposes....

[*N.J.S.A.* 19:44A–3(c).]

that ELEC alone has the authority to conduct hearings and determine whether the Act has been violated. They claim that the Legislature vested with ELEC the "primary exclusive jurisdiction" to decide cases arising under the Act and that this legislative grant of authority to the administrative agency preempted the Superior Court from exercising jurisdiction. *Abbott v. Burke,* 100 *N.J.* 269, 297, 495 *A.*2d 376 (1985); *see also Greate Bay Hotel & Casino v. Tose,* 34 *F.*3d 1227, 1230 n. 5 (3d Cir.1994). To a large extent defendant's argument pertaining to subject matter jurisdiction mirrors their contention relating to plaintiffs' standing. Specifically, they assert that because plaintiffs were not "candidates" in the Democratic primary election, the Superior Court lacked jurisdiction under *N.J.S.A.* 19:44A–22.1 to entertain a summary action and grant injunctive relief. This argument does not require extended discussion.

We are convinced that the Superior Court has subject matter jurisdiction pursuant to *N.J.S.A.* 19:44A–22.1 to consider the complaint of a candidate in a general election challenging the legality of contributions received by an opponent in a primary election, at least where a portion of the contested contributions has been transferred for use against the opponent in the general election.

We merely add that defendants's reliance on *O'Neill v. Lerner,* 154 *N.J.Super.* 317, 381 *A.*2d 383 (App.Div.1977) is clearly misplaced. There, we held that the Act "contemplate[d] a remedy initially through ELEC rather than the courts," for a campaign committee's violation of its reporting and disclosure responsibilities. *Id.* at 324, 381 *A.*2d 383. We noted, however, that the courts had jurisdiction to consider "colorably supported" claims of other violations of the Act. *Id.* at 325, 381 *A.*2d 383. In any event, our decision was rendered in 1977, long before the enactment of *N.J.S.A.* 19:44A–22.1. *O'Neill* has no bearing on the issues presented here.

We hasten to note that, although the Superior Court has subject matter jurisdiction to resolve election disputes pertaining to viola-

tions of the Act's restrictions on campaign contributions, it may choose in appropriate cases not to exercise that power. *N.J.S.A.* 19:44A–22.1 contemplates summary actions in which injunctive relief is sought to prevent irreparable injury. Cases may arise, which because of their complexity or other factors, are not amenable to a summary action or injunctive relief. *See, e.g., Hammer v. N.J. Voice, Inc.,* 302 *N.J.Super.* 169, 694 *A.*2d 1080 (Law Div. 1996). The Superior Court may decline to exercise jurisdiction in such cases.

## V.

■ We turn to defendants' argument that the trial court erred in its factual findings and conclusions. Our examination of the record discloses ample evidence supporting the trial court's finding that R & V, New Horizons and New Beginnings engaged in an unlawful conspiracy in which R & V controlled the activities of the continuing political committees and directed the flow of their contributions. In the language of *N.J.S.A.* 19:44A–22(a)(2), R & V "willfully and intentionally agree[d]" with New Horizons and New Beginnings to "make a contribution" to those entities "with the intent, or upon the condition, understanding or belief" that those entities would "make a contribution" to a specified recipient. *Ibid.*

■ We are convinced, however, that the trial court erred in its conclusion that R & V and New Horizons violated *N.J.S.A.* 19:44A–22(a)(2) by making contributions to the Voorhees 2000 Committee. Considerable evidence was presented indicating that the Voorhees 2000 Committee, the Voorhees Democratic Club and the Hammer and Beckman campaign fund engaged in an unlawful conspiracy to direct the flow of campaign contributions. But the record is barren of any evidence supporting the conclusion that R & V and New Horizons entered into an agreement with the Voorhees 2000 Committee under which contributions would be made to the Voorhees 2000 Committee and then funneled to a specified recipient. The trial court did not find that R & V, New Horizons and the Voorhees 2000 Committee entered into such an

agreement. The court found, instead, that *N.J.S.A.* 19:44A–22(a)(2) was violated because R & V and New Horizons, among others, had some unspecified "influence" over the Voorhees 2000 Committee.[6] In making this finding, the court misinterpreted the reach of *N.J.S.A.* 19:44A–22(a)(2).

To be sure, the statute is not a model of clarity. The section could be read to bar a business or individual from making a contribution to a continuing political committee with the belief, expectation or understanding that the continuing political committee will make a contribution to a particular recipient. But this could not have been the Legislature's intent. Various interest groups and organizations commonly express their views on policy questions and their endorsement or choice of candidates. Businesses and individuals often make donations to such groups and organizations with the reasonable expectation that they will support a particular candidate and perhaps contribute to his or her campaign. We are convinced that *N.J.S.A.* 19:44A–22(a)(2) was not intended to preclude such donations.

We believe that the statute would be subject to constitutional challenge if its terms were to be enforced literally and inflexibly. Applied in a rigid fashion, the oppressive effect of the statute on virtually all individuals who make contributions to

---

[6] We note that over one-half of the following contributions to the Voorhees 2000 Committee were made by R & V and its alter ego New Horizons:

Contributions to Voorhees 2000

| | | |
|---|---|---|
| a) | R & V | 1500 |
| b) | Garden State Parking | 500 |
| c) | Shore Slurry Seal | 1500 |
| d) | New Horizons | 3500 |
| e) | Paparone Homes | 2500 |
| | Total | 9,500 |

This fact standing alone does not satisfy the "clear and convincing evidence" standard mandated by *N.J.S.A.* 19:44A–22(a)(2).

continuing political committees would far exceed the outermost bounds of its legitimate governmental purpose. By definition, a continuing political committee makes or is expected to make contributions to political candidates and their committees. To bar businesses and individuals from agreeing to make contributions to such committees because of a "belief" that they will, in turn, donate monies to a particular candidate would exert a substantial chilling effect on the political process and seriously dampen and impair First Amendment association and expression rights. We view it our obligation to interpret the statute in a narrow fashion consistent with constitutional prescriptions and what we perceive to be the manifest legislative intent. *See United States v. Harriss,* 347 *U.S.* 612, 618, 74 *S.Ct.* 808, 812, 98 *L.Ed.* 989, 996–97 (1954); *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 74–75, 411 *A.*2d 168 (1980); *Borough of Collingswood v. Ringgold,* 66 *N.J.* 350, 357, 331 *A.*2d 262 (1975), *app. dism.,* 426 *U.S.* 901, 96 *S.Ct.* 2220, 48 *L.Ed.*2d 826 (1976); *State v. De Santis,* 65 *N.J.* 462, 472–73, 323 *A.*2d 489 (1974); *Camarco v. City of Orange,* 61 *N.J.* 463, 466, 295 *A.*2d 353 (1972). The legislative goal was to ventilate the political process by identifying and monitoring the source and flow of money intended to influence the electoral process. The object of the restrictions on campaign contributions was to level the playing field, not bar citizens from making such donations. We interpret the statute accordingly.

We construe the statute as barring a business or individual from entering into an agreement that requires, as one of its essential terms, that the donor's contribution will be funneled by the continuing political committee to a predetermined recipient. To be unlawful, the parties must agree either expressly or implicitly that the donor's contribution will ultimately be funneled by the continuing political committee to a designated recipient. We recognize that such an agreement may be proved by circumstantial evidence alone, because rarely will there be direct evidence. *See Interstate Circuit, Inc. v. United States,* 306 *U.S.* 208, 221, 59

S.Ct. 467, 472, 83 L.Ed. 610 (1939); State v. General Restoration Co., 42 N.J. 366, 375, 201 A.2d 33 (1964); State v. Sherwin, 127 N.J.Super. 370, 317 A.2d 414 (App.Div.), certif. denied, 65 N.J. 569, 325 A.2d 703 (1974), pet. dism. sub nom., Loughran v. New Jersey, 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974). The evidence need not lead to a certainty. However, N.J.S.A. 19:44A–22(a)(2) mandates that a violation must be shown "only upon clear and convincing evidence." The evidence must be "so clear, direct and weighty and convincing as to enable [the] judge . . . to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Seaman, 133 N.J. 67, 74, 627 A.2d 106 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J.Super. 156, 162, 165 A.2d 531 (App.Div.1960)).

Applying that standard, we cannot fairly say that the evidence established the required link between R & V and New Horizons with the Voorhees 2000 Committee. As mentioned earlier, the trial court did not make specific findings in support of its conclusion that R & V, New Horizons and New Beginnings made illegal contributions of $5,000 in the primary election and $5,000 in the general election. We are thus unable to determine the extent to which our decision impacts on the injunction issued. We have sustained the trial court's findings respecting the unlawful agreement between R & V, New Horizons and New Beginnings. We have also said that the record supports a conclusion the Voorhees 2000 Committee, the Voorhees Democratic Club, and the Hammer and Beckman campaign fund agreed among themselves to direct the flow of contributions. The terms of the injunction may require modification to the extent that it was grounded in the trial court's unsupported conclusion concerning the relationship between R & V, New Horizons, and the Voorhees 2000 Committee.

The Law Division's judgment is thus affirmed in part and reversed in part. The matter is remanded for proceedings consistent with this opinion and appropriate modifications of the judgment.